## Crawford's Estate.

Argued September 29, 1931. Before WALLING, SIMP-
SON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*George A. Baldwin* and *Forest G. Moorhead,* with
them *M. P. Breene,* for appellant.—The court was in
error in reducing the fee: Com. v. Corrier, 302 Pa.
431; Snyder's App., 301 Pa. 276.

The policy of the law requires judicial purity, fair-
ness and disinterestedness as a matter of public con-

cern, with the right on the part of a litigant to rely on these safeguards and demand their protection. Such policy justified the petition of Mr. Hastings, with all due respect to the conclusions of Judge READER. Judge PARKER'S personal feelings, his desire for an opportunity to explain, his sense of injury as amplified and protected by Judge READER, have little or no weight when set over against the demand of public policy. And public policy requires that our judges be above suspicion, that our courts be fountains of justice clear of any suspicion of evil.

No brief for appellee.

OPINION BY MR. JUSTICE KEPHART, November 23, 1931:

When charges of disqualification were preferred against the presiding judge of the orphans' court because of alleged prejudice and hostile feeling against an attorney who was also the litigant, a judge from another county was called in to pass on the charges. The authority of the court below to certify the question of disqualification to a judge of another county, who is not the judge residing nearest to the county seat where the case was on trial, is here challenged.

The Act of April 15, 1834, P. L. 349, section 37, provides, inter alia, that when the president judge shall be personally interested in the event of any cause, the president judge residing nearest the place where the case is to be tried may fix a time and hold a special court for such causes. By the Act of March 18, 1840, P. L. 153, when a special court is necessary under the Act of 1834, the presiding judge residing nearest must not be incompetent under the Act of 1834 if the same causes were pending in his own court. In case of sickness or inability of a judge to hold the regular term of court for any cause whatever, any other judge in the Commonwealth may be called in: Act of April 2, 1860,

P. L. 552. The supplement of May 1, 1861, P. L. 494, enlarges the causes for calling in another judge by adding thereto all cases which a judge of the district is prohibited by law from trying.

These four acts have all been construed together as referring to cases to be tried at a special term of court, because the president judge, by reason of sickness of himself or his family, or his inability from any cause, or by reason of having been counsel, is unable to act or is disqualified from acting, and it is desirable to have another judge hold the regular term of court: Com. v. White, 161 Pa. 576, 580. Any judge in the state may act under these circumstances.

The Act of April 22, 1856, P. L. 500 directs that, when the president judge shall be a party, any action or suit "shall be tried and heard before the president judge residing nearest the place of trial who shall be disinterested." While the purpose of this act seems to be covered by the above statutes, it has been held in Com. v. White, supra, that this act was still in effect. That case considered the act of the president judge of Indiana County who had certified a case in the orphans' court in which he was a party, and it was there decided that it should have been certified to the nearest presiding judge who should be disinterested. The act was held to be precise and mandatory, leaving nothing to the discretion of the judge when he is a party in a case.

Where a judge is a party to a suit, he may certify his disability and order the case to be heard before the president judge residing nearest, under the Act of 1856, P. L. 500, or the other party may apply by petition for a change of venue under the Act of March 30, 1875, P. L. 35. This latter act provides that a change of venue may be had in civil and equity causes, inter alia, when the judge shall be personally interested in the event of the case or in the question to be determined, or wherein a near relative of the judge shall be a party

or interested in the event. Each of these acts is effective to secure an impartial trial: Wallace v. Jameson, 179 Pa. 98, 113.

There is no repugnance in any of the foregoing acts; they may all stand as treating of different situations requiring a change of venue or the calling in of another judge to hear the case. See also Act of March 18, 1909, P. L. 37.

Article 3, section 23, of the Constitution provides that the power to change the venue in civil and criminal cases shall be vested in the courts, and that it be exercised in such manner as shall be provided by law. It is the duty of the person whose cause comes within those named by the legislature to comply strictly with the statutory provisions in determining the right to have his cause heard by another judge or in another county: Little v. Wyoming Co., 214 Pa. 596, 599. When the legislature has not acted on a cause which is of sufficient importance to require a change of venue, the right to such change is not lost, and the power is still lodged in the Supreme Court. This applies to the designation of a judge to hear the case: Summers v. Kramer, 271 Pa. 189, 198.

The trial judge not being a party as intended by the Act of 1856, (Com. v. White, supra), that act does not apply to the present question. However, the Act of June 7, 1917, P. L. 363 controls this case. Section 3 of that act reads: "Whenever by reason of sickness, absence, interest, or other cause......a judge of a court of common pleas in a judicial district having no orphans' court, may be unable to sit in any matter depending on the orphans' court of such district......it shall be lawful for said judge to call upon any judge ......to preside in and determine such matter." Venango County has no separate orphans' court and is within this class.

The act reads "unable to sit in any matter." A challenge to the qualifications of any judge is such an issue

as will bring the judge within the meaning of "unable to sit in any matter," and it is therefore within the scope of the act. The fact that the judge was not called in to pass on the main question involved, but only a subsidiary point, the decision of which had no bearing on the substantive question involved, will not take the question out of the apparent scope of the act. There is no conflict between this act and its predecessors which affects the matter before us. The Act of 1917 enlarges, as to orphans' courts, the causes for which change of the hearing judge may be had, and would seem to embrace any reason. Moreover, it specifically permits the calling in of any judge in the Commonwealth.

The only question open to us is whether the appellant has brought himself within the terms of the statute by presenting a cause which would render the judge unable to sit in the matter pending before him. The proper practice on a plea of prejudice is to address an application by petition to the judge before whom the proceedings are being tried. He may determine the question in the first instance, and ordinarily his disposition of it will not be disturbed unless there is an abuse of discretion.

Due consideration should be given by him to the fact that the administration of justice should be beyond the appearance of unfairness. But, while the mediation of courts is based upon the principle of judicial impartiality, disinterestedness, and fairness pervading the whole system of judicature, so that courts may as near as possible be above suspicion, there is, on the other side, an important issue at stake; that is, that causes may not be unfairly prejudiced, unduly delayed, or discontent created through unfounded charges of prejudice or unfairness made against the judge in the trial of a cause. It is of great importance to the administration of justice that such should not occur. If the judge feels that he can hear and dispose of the case fairly and without prejudice, his decision will be final

unless there is an abuse of discretion. This must be so for the security of the bench and the successful administration of justice. Otherwise, unfounded and ofttimes malicious charges made during the trial by bold and unscrupulous advocates might be fatal to a cause, or litigation might be unfairly and improperly held up awaiting the decision of such a question or the assignment of another judge to try the case. If lightly countenanced, such practice might be resorted to, thereby tending to discredit the judicial system. The conscience of the judge alone is brought in question; he should, as far as possible, avoid any feeling of unfairness or hostility to the litigants in a case. If the judge wishes a full exposition of the question of unfairness, he may follow the unusual practice of Judge PARKER and summon another judge to decide it, but he is not required to do so.

When a charge of disqualification is made against a trial or hearing judge, the party must produce evidence which has a tendency to show bias, prejudice or unfairness. To sustain the charge, the exceptant is not limited to the instant case, but he may show personal ill will to client or counsel, or temperamental prejudice on the particular class of litigation involved, or any other recognized ground. The charge of disqualification is serious and should not be made lightly or frivolously. Yet the suitors and counsel should be free of embarrassment in making such charge when just ground exists; and where the judge whose fairness has been challenged submits the case to the determination of another judge, the door is thrown open for proof of the charges as it would be if he had heard the case.

In the instant case, it might be that the presiding judge, in his endeavor to protect the interest of the fatherless children of France, expressed himself too strongly against the appellant, but this may be attributed to that desire rather than to any animosity toward appellant. We agree with the conclusion of Judge

READER that no direct evidence of prejudice was shown. The disposition of the second question following will make any further discussion of this subject unnecessary.

Dr. Crawford died testate in 1925, having given his residuary estate "to and for the benefit of the fatherless children of France." The heirs contested the will and the French Embassy employed Hastings to resist their claim. He was to be paid on a contingent basis, only if a fund should be secured for the benefit of the French orphans. Pursuant to such employment, he entered his appearance for the French National Committee of Childhood, a department of the French Republic, and thereafter conducted the litigation successfully before the auditor, the Orphans' Court of Venango County, and this court. See Crawford's Est., 294 Pa. 201. The estate amounted to approximately $200,000 and the residuary estate awarded for the benefit of the French orphans was $72,861.49. The French Embassy petitioned the orphans' court to pay Hastings the sum of $10,000 as a reasonable fee. This petition was presented in January, 1929, and in August the court dismissed the embassy petition and invited Mr. Hastings to present his own petition. However, the court later reinstated the original petition and held hearings as to the reasonableness of such fee. This was on November 15, 1929, when fourteen members of the local bar testified that the fee was reasonable. The case was not decided for many months when Mr. Hastings presented his petition alleging the disqualification of Judge PARKER. The effect of this has already been discussed. Judge PARKER, on October 4, 1930, finally awarded a fee of $4,000 and expenses of $120.00.

There can be no doubt but that Mr. Hastings was entitled to reasonable compensation (McKelvy's App., 108 Pa. 615; Schwartz v. Oil Co., 164 Pa. 415), and there can be no doubt but that the trust fund is the source from which the money shall be paid. Such is the case when a guardian employs counsel to protect

his ward's estate: Price's App., 116 Pa. 410. Also where a trustee employs counsel: Kennedy's Est., 141 Pa. 479; Hay's Est., 153 Pa. 328. See also Shaffer v. Spangler, 144 Pa. 223; Weed's Est., 163 Pa. 595. Where all but one of the heirs employ counsel to protect an estate, counsel was held entitled to compensation out of the entire estate: Francis's Est., 5 Kulp 17. Hence, where the fund has been secured for a charitable use through the services of an attorney, he is entitled to recover a fee out of the corpus of the trust estate.

Appellant's contention is that the petition of the French Embassy representing the French Government was competent and sufficient on the point of reasonableness as it was responsible for the ultimate welfare of these orphans. We need not discuss this question or the duty of our courts to it as measured by our rules concerning the supervision of the estates of children in this Commonwealth. Nor need we question the finality of the French government's decision as to the reasonableness of this fee because other evidence is sufficient to sustain our conclusion.

We said in McKelvy's Appeal, supra, that the hearing judge was competent to fix the value of services. Fees should be on a moderate scale of compensation, and none should be allowed but such as are fair and just: Equitable Trust Company v. Garis, 190 Pa. 544, 552; Wier v. Myers, 34 Pa. 377; Davidson's Est., 300 Pa. 26. When the fees of counsel come before the orphans' court, it is a function of the court to decide what is a reasonable and just compensation under all the circumstances.

In this case we have not only the petition of the French Embassy that the fee was reasonable, but we also have the testimony of fourteen members of the bar cognizant of the facts in the case. All agreed that the sum of $10,000 was a reasonable compensation. No evidence was offered to show that the services were not worth that amount, and no explanation is made by

the court below for the reduction he made in this sum. It has been suggested that other counsel played some part in the case, but our examination of the record shows this not to be the case. No services were performed for these legatees by others than Hastings. The court also intimates that as Mr. Hastings wrote this will he should not be entitled to the full amount of his services as the will was provocative of litigation. An attorney in drawing a will is under no obligation to anyone but his client; certainly not to legatees, and surely not to successful ones. See Savings Bank v. Ward, 100 U. S. 195; Buckly v. Gray, 11 Cal. 339. The answer to this is that the will was sustained by the auditor, the orphans' court, and the Supreme Court and no doubt the attorney played an important part in this litigation. An attorney who writes a will does not guarantee that it will not be contested.

On the general question, Moore's Est., 228 Pa. 516, 522, is controlling. We there state, "The learned judge has not given us the benefit of any findings in detail with respect to the value of the services, but has contented himself with the statement of the final conclusion reached by him in fixing the total amount to be allowed. Had reasons been given which fairly warranted the reduction, or had the items of service for which the charge was deemed too high been pointed out, or referred to, or had findings of fact upon disputed testimony or doubtful inferences as to the value of the services been set forth, we would be slow to question them. But with the mere naked conclusion that under the testimony the amount of the charge for services by counsel as a whole was excessive, we cannot agree. We are all of the opinion that upon the record as it stands in this appeal, no sufficient reason appears for reducing the amount of the allowance claimed for counsel fees." "While the lower court has discretion as to the compensation allowed the counsel of a trustee, yet, in adjusting the same, it cannot arbitrarily and

without reason ignore the undisputed evidence": Commonwealth v. Traders and Mechanics Bank of Pittsburgh, 268 Pa. 526, 528.

We conclude that Mr. Hastings was entitled to his full compensation, and the court below was in error in cutting it down.

The decree of the court below is reversed, and it is directed that a decree be entered in accordance with this opinion awarding Mr. Hastings full counsel fee of $10,000; costs to be paid from the estate.