McRoberts, Appellant, *v.* Burns et al.

Argued September 30, 1943. Before MAXEY, C. J., DREW, LINN, PATTERSON and STEARNE, JJ.

*Charles F. Dean,* for appellant.

*Harry A. Estep,* with him *Clyde A. Armstrong* of *Thorp, Bostwick, Reed & Armstrong,* and *Lee W. Eckels,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, November 22, 1943:

This is an appeal from the decree of the court below finding that the defendant Burns was not guilty of any of the alleged fraudulent acts complained of and denying the relief prayed for. Plaintiff filed a bill in equity to set aside a power of attorney which he alleged that Attorney Bradley McK. Burns, and the latter's friend, Bingham S. Packard, fraudulently secured from him fifteen days after the death of plaintiff's half brother, James McRoberts, who died intestate, unmarried, and without issue, seized of real estate valued at $129,160. Under the law the plaintiff became seized of an undivided one-fourth interest in this estate. The power of

attorney authorized Burns to recover for the plaintiff whatever might be due him from the estate. As compensation therefor he assigned to his attorney thirty-three and a third per-cent (33-⅓%) of the sums of money which may be recovered in any proceedings either at law or in equity, instituted under the power given.

On October 17, 1939, Samuel McRoberts, brother of decedent, who had not known of plaintiff's whereabouts for forty years and did not know whether plaintiff was living or dead, had Letters of Administration issued to him. The application for Letters of Administration did not list plaintiff among the heirs. Samuel McRoberts was advised by G. D. Schrum, who was attorney for the Estate of James McRoberts, Deceased, that it would be necessary to locate his absent brother, the plaintiff, or his heirs, so that good title could be given to the real estate. After Letters of Administration were granted, Samuel McRoberts and Attorney Schrum began a search for plaintiff. The defendant, B. S. Packard, had been a tenant on the deceased's farm for several years before McRoberts's death. He knew there was an "unknown" half-brother. Packard communicated with Attorney Burns four days after the burial of decedent acquainting him with the situation. On October 27, 1939, Burns canvassed certain districts of Pittsburgh and finally located plaintiff's residence and requested plaintiff's wife to have plaintiff communicate with him. That evening Burns informed Packard that he had located the plaintiff and requested Packard to bring plaintiff to his office. On the following morning Packard induced plaintiff and his wife to accompany him to Burns' office where plaintiff learned for the first time of his half-brother's death. Plaintiff's testimony on this point is as follows: "Mr. Burns started telling me about my brother Jim dying. I didn't know nothing about it, and he said I was coming into this estate, that I had to have an attorney to fight this case, get the estate for me, and Mr. Packard he

says if Sam and them knowed that I was coming in for my share of the estate, hard telling what might happen, what they might do to beat me out of it, that they would do me bodily harm . . . Mr. Packard says if I wouldn't give the case to Mr. Burns he wouldn't have nothing to do with it, he would work again me, and Mr. Burns spoke up and says that I would have to sign the paper in order for him to go ahead and fight and get my share of the case . . . So I handed it to my wife, and we hesitated about signing it—we didn't want to sign it at first. At first my wife wanted to take it out, and Mr. Burns says, 'Oh, you can look up my record in Sewickley' . . . So I signed the power of attorney."

Defendant Burns testified on cross-examination as to what took place at the meeting on October 28, 1939, as follows: ". . . they wanted to know what I had found out . . . and they asked me my opinion as to whether it meant anything to them, and I said that that was a pretty large order, that it would be hard to say. I said that if this was the same James Altenbaugh McRoberts, the son of James F. McRoberts, from what I had so far seen, it seemed probable to me that he had an undivided interest in this deceased brother's estate, and they then asked me if I wouldn't look after the matter for them . . . I agreed to represent them." On this statement of Burns appellant chiefly relies to sustain his charge of fraud. Appellant's paper book contains this statement: "The bare fact that Burns knew that plaintiff was seized of an undivided one-fourth ($\frac{1}{4}$) interest in said real estate when plaintiff visited Burns's office and did not advise him thereof but on the contrary induced him to execute a power of attorney, employing Burns to recover same for him on a contingent fee basis of Thirty-three and one-third (33-$\frac{1}{3}$) per cent is of itself sufficient to show deception and unfair dealing. Burns' own testimony convicts him of actual or positive fraud." Appellant further claims that "Attorney Burns occupied a confidential relationship with plaintiff and did not meet the burden

of proof [of showing] that no deception was used in the procurement of said power of attorney . . . and that the execution of the power of attorney was the free and intelligent act of the plaintiff".

The court below negatived appellant's contention and found " as a fact that the defendant Burns dealt honestly and openly in all of his dealings with the plaintiff". The court also concluded as a matter of law that "there was no fraud or concealment of any kind whatsoever of any material facts on the part of said Bradley McK. Burns, either at the time the said power of attorney was signed by the plaintiff, or at any other time".

The burden of proof in this case was upon the plaintiff. The appellant has proceeded on the theory that there was such a confidential relationship existing between appellant and Attorney Burns as to place the burden of proof upon Burns to show that he had dealt honestly and openly with the appellant. It is true that a confidential relationship exists between attorney and client, but at the time of the fraud alleged this relationship between these two parties had not been established. If there was any fraud committed by Attorney Burns it was not *after* he became appellant's attorney but when he induced appellant to engage him as his attorney and to give him the power of attorney. It is the duty of any attorney to deal fairly with all persons whether clients or strangers, but the fact that Burns was an attorney when he had the conversation which led to the execution of the power of attorney does not cast the burden of proof upon him. He who alleges fraud in a case like this must prove it or the charge falls.

The court below found that there was no fraud here. Burns' statement on cross-examination that "it seemed probable" to him that McRoberts had an undivided interest in this deceased half brother's estate was an understatement that invites the imputation of being lacking in candor, but it does not amount to fraud. Burns should have made it clear to McRoberts that *if* the latter was

the half brother of the decedent, and *if* decedent died intestate and *without* issue, he, McRoberts, had an undivided interest in the decedent's estate. Burns admitted on cross-examination that he knew at the time he secured the power of attorney that if the man who executed it was James Altenbaugh McRoberts, the half brother of the decedent, he had a vested interest in that half brother's estate. Under *those* facts his interest was more than a "probable" one.

However, at the time of this conversation, McRoberts has not been recognized by the administrator or by any other party in interest as related to the decedent or as having any interest in his estate, and McRoberts obviously required the advice and services of an attorney. He engaged Burns in that capacity and the latter secured recognition of his claim.

He had found that there had been previous litigation which was instituted by the second wife to open up a judgment held by John, James, Samuel and Mary McRoberts against James S. McRoberts on the ground of fraud. He also visited the Register of Wills office and found a record of the administration of the Estate of James S. McRoberts, appellant's father, who died in 1912, wherein one Albert J. Steckler was appointed guardian for James A. McRoberts and receipted for the latter's distributive share. He said that he had told his friend Packard about what he had found and that there seemed to be a "missing brother" and that if this James Altenbaugh McRoberts was living he would undoubtedly be an heir.

After obtaining the power of attorney, Burns notified the Administrator that he represented appellant and requested that the application for Letters of Administration should be amended so as to include appellant as one of the heirs. The Administrator demanded proof of appellant's identity as such. Appellant's wife thereafter delivered to Burns the marriage certificate of appellant's parents, and a first and final account of the trustee of

the estate of appellant's mother, and also other documents. Burns telephoned attorney Schrum that he had such documents and endeavored to make an appointment with him so that the latter could examine them. Several appointments were made but postponements were asked for by Schrum. The latter finally met the appellant and his wife and Attorney Burns at Burns' law office on or about November 15, 1939, and Schrum examined appellant's documents but expressed no opinion as to their probative value.

On March 11, 1940, Burns as attorney for appellant filed a petition for partition of decedent's real estate. Samuel McRoberts, Administrator, filed an answer denying the heirship of appellant. Preliminary objections to this answer were filed. After argument the court ordered a hearing on the issue. Shortly thereafter a stipulation was filed admitting this relationship and appellant's rights as heir. On April 13, 1942, plaintiff instituted a suit in equity to set aside the power of attorney executed twenty-nine and one-half months previously, averring that he had "little education" and that the defendants used "undue influence and intimidations upon Plaintiff; in failing to fully disclose to and advise plaintiff of his rights; in denying plaintiff the right to obtain independent legal advice; in making untrue and false representations to the plaintiff as to his legal status; . . . providing for unconscionable fee of one-third of his estate." The evidence on which the appellant relies to support his averments is chiefly the above quoted statement that Attorney Burns made on cross-examination.

As to the fee of Attorney Burns, the Court below said: "There was not one word of testimony in this case concerning the propriety of the attorney's fee of the defendant Burns. The question was never gone into during the trial of the case and it was not raised by the plaintiff's present counsel until the final argument upon the exceptions filed in this case. Accordingly, the record is absolutely barren of any complete statement as to the

amount of work done or performed by the defendant Burns or as to the value of such work, and there is nothing whatsoever in the case which would now justify plaintiff in raising this question, other than his allegation in the bill of complaint that the attorney's fee is excessive and unreasonable." The court further stated: "That the defendant Burns agreed to apply toward the attorney's fee provided for by this power of attorney, any amount of money which might be awarded to him as attorney for the petitioner for partition, and which amount of money was assessable against the plaintiff in this case as the petitioner in partition." [1]

In the light of the foregoing statement, whether or not the fee charged was excessive we are not now called upon to adjudicate. Courts will in appropriate proceedings reduce lawyers' fees if they are excessive. See *Davidson's Est.*, 300 Pa. 26, 150 A. 152. We said in *Crawford's Est.*, 307 Pa. 102, 111: "Fees should be on a moderate scale of compensation, and none should be allowed but such as are fair and just."[2]

The appellant states as one of "the questions involved" the following: "Where an attorney offers no explanation of his guarantee of the note of a runner, who brought the case to him, may the Chancellor avoid the significance of the guarantee by finding that he guaran-

---

[1] The partition fee fixed by Judge Trimble was $6,500. The proportionate share of Burns' client was $812.50. This latter is the sum which it was agreed should be deducted from the one-third contingent fee provided for in the power of attorney. The contingent fee amounts to more than $10,000.

[2] Canon 12 of the Canons of Professional Ethics of the American Bar Association lays down principles which all attorneys should adhere to in fixing their fees. Among them are these: "A client's ability to pay cannot justify a charge in excess of the value of the service; In determining the amount of the fee, it is proper to consider the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite properly to conduct the cause. . . . It should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

teed the runner's note solely out of gratitude?" The genesis of this "question" is the fact that appellant alleges that Packard came to him and stated that he, Packard, was in trouble and was going to be sold out and asking McRoberts for a loan of money. When McRoberts said he had no money, Packard asked him for a note. McRoberts said he would have to see Attorney Burns, and Packard then brought Burns to his house and told McRoberts to go ahead and sign the note for Packard in the sum of $1,000. Burns guaranteed this note. We fail to see how this has any bearing on the issue of fraud. Neither is the allegation and evidence with regard to Burns and Packard "splitting Burns's fee" in the case material to the issue of fraud. As proof that Burns and Packard "agreed to split the fees" appellant cites the fact of this loan, that Burns and Packard held plaintiff's money jointly in the First National Bank of Pittsburgh, that Burns and Packard signed every check which plaintiff received from the estate, and that Burns guaranteed Packard's note to plaintiff. Appellant argues that this proves that Packard and Burns "schemed to get this case and obtain for themselves as much as they could." Mere "scheming to get a case" does not in itself establish a charge that the person who "gave the case" was defrauded into doing so.

In respect to this joint account in the bank, the court below said: Packard and Burns "agreed to pay to the plaintiff the sum of Twenty-five dollars per week until such income from the estate was forthcoming. To carry out this agreement, Burns and Packard agreed to establish a bank account subject to the check of both of them and to which account Burns from time to time made contributions and Packard made some contributions. From time to time, Burns and Packard drew checks from this account and paid to the plaintiff and his wife the sum of Twenty-five dollars per week."

We agree with the court below that the charge made on April 21, 1942, that the power of attorney the plain-

tiff executed on October 28, 1939, was secured by the fraud of defendants has not been sustained. The decree is affirmed at the appellant's cost.

Mr. Justice DREW concurs in the conclusion reached.