## Coleman v. Pennsylvania Turnpike Commission

*Nissley, Cleckner & Fearen*, for plaintiff.

*Anne X. Alpern*, Attorney General, and *Henry E. Harner*, Deputy Attorney General, for defendant.

KREIDER, J., July 20, 1961.—Plaintiff, Irving W. Coleman, is a member of the bar of Lehigh County. He has brought suit against the Pennsylvania Turnpike Commission to recover compensation for professional services he rendered as special counsel to the commission in a land condemnation case. The parties waived a trial by jury, and the case was heard by the writer of this opinion. The pleadings consisted of plaintiff's complaint, defendant Turnpike Commission's answer with new matter and plaintiff's reply thereto.

Plaintiff averred that on or about July 11, 1957, he was employed by the Turnpike Commission to represent it in a land damage proceeding arising out of the condemnation by the commission of 65.31 acres of land in connection with the construction of the Lehigh Valley Interchange of the Pennsylvania Northeast Extension of the turnpike, a short distance west of the city of Allentown. That proceeding was begun by the landowner, Lehigh Valley Trust Company, trustee under a deed of trust for Fred A. Fetherolf, Jr., which secured the appointment of a board of viewers by the Court of Common Pleas of Lehigh County.

The viewers held three or four hearings but plaintiff attended only the first. Thereafter, he sent Martin A. Kutler, a lawyer who was in his employ, to attend the hearings.[1] The viewers awarded the landowner $170,000 as damages. The Turnpike Commission filed exceptions to the award and demanded a trial by jury. After the landowner filed a complaint and the com-

---

[1] Mr. Kutler was not a member of the Lehigh County bar but was admitted to practice in the Northampton County courts.

mission an answer thereto, the case was tried before Judge Kenneth H. Koch and a jury. The verdict was as follows: (a) Damages $49,000; (b) detention damage at the rate of 4 percent, $10,355; total verdict, $59,355. Judge Koch in an opinion reported in 28 Lehigh 426 (1960), refused to grant the landowner's motion for a new trial but increased the detention damages to $15,557.50, at the rate of six percent, making a total verdict of $64,557.50. On appeal to the Supreme Court, the decision of the Lehigh County Court was affirmed: Lehigh Valley Trust Co. v. Pennsylvania Turnpike Commission, 401 Pa. 135 (1960).

In the instant case, plaintiff claims that the sum of $25,000 is the reasonable value of his services in the said Fetherolf case, which included his appearance before the board of viewers, conducting the trial by jury and thereafter preparing the briefs[2] and arguing the same in the lower court and in the Supreme Court of Pennsylvania. He also claims the sum of $97.15 for necessary expenses incurred by him.

The Turnpike Commission in its answer admitted that it had engaged plaintiff as its counsel. It denied, however, that plaintiff had performed all the services for which he claims compensation and averred that Mr. Kutler had represented the commission in the hearings before the board of viewers. It also averred that the members of the commission's legal staff were in frequent contact with plaintiff in preparing the case, gave him advice and instructions at all stages of the litigation concerning the applicable law, trial, hearing procedure, briefs, argument and other relevant matters. The commission also denied that the

---

[2] Plaintiff prepared a brief in support of the verdict and also a brief in the cross-appeal which he urged the commission to take from Judge Koch's order increasing the detention damages from four percent to six percent. The cross-appeal was not sustained.

reasonable value of plaintiff's services, including those rendered by Mr. Kutler, was $25,000. It averred, on the contrary, that this amount is grossly excessive, exorbitant and unconscionable, but that defendant is ready and willing to pay plaintiff reasonable compensation for his services.

In its new matter, the commission averred that plaintiff was retained in 1956 to represent it in all litigation arising in Lehigh County from the condemnation and appropriation of land needed for the construction of the northeast extension of the turnpike in said county and that, in connection with plaintiff's duties as local counsel, plaintiff was authorized to act as the commission's counsel and represented it in litigation in 10 separate cases of property owners whose land had been condemned and appropriated, in addition to the said Fetherolf case which gave rise to the present suit. It also averred that plaintiff had been compensated by defendant for his services in those cases.

The commission alleged that when plaintiff was retained in the instant case, it was understood and agreed by him and defendant that he was to be paid reasonable compensation for his services, and that the principal factor to be taken into account in determining such compensation was the actual time spent on the case and that consideration was also to be given to the fact that all right-of-way cases in Lehigh County were thereafter to be referred to plaintiff.

In plaintiff's reply to new matter, he admitted that he had been retained by the commission in the year 1956 to represent it from time to time in litigation arising from the condemnation and appropriation of land needed for the construction of the Northeast Extension of the turnpike in Lehigh County and that he acted in such capacity in matters involving vari-

ous claims by property owners against the commission.

Plaintiff, however, denied he agreed that the principal factor to be taken into account in determining his compensation for services rendered in the instant case was to be the actual time he spent on it. He also denied that consideration was to be given to the fact that all right-of-way cases in Lehigh County were thereafter to be referred to him. Plaintiff averred that the amount of time spent was to be only one of the factors to be considered in ascertaining the value of his services and that various other legally recognized factors were to be considered in determining his compensation. Plaintiff also denied the allegation that he did not perform all services required of him and averred that while Mr. Kutler attended the hearings before the board of viewers, he did so in the capacity of an employe of plaintiff under the latter's direction, supervision and control and with knowledge of the counsel of the Right-of-Way Division of the commission.

In the absence of a special agreement, the general rule is that an attorney is entitled to be paid the reasonable value of his services. In Huffman Estate (No. 3), 349 Pa. 59 (1944), the Supreme Court of Pennsylvania, speaking through Mr. Justice Hughes, said: (pp. 64-5)

"Fees should be on a moderate scale of compensation, and none should be allowed but such as are fair and just: Davidson's Estate, 300 Pa. 26, 150 A. 152; Crawford's Estate, 307 Pa. 102, 111, 160 A. 585.

" 'The things to be taken into consideration in determining the compensation to be recovered by an attorney are the amount and character of the services rendered, the labor, the time, and trouble involved, the character and importance of the litigation, the amount of money or value of the property affected, the professional skill and experience called for, and the

standing of the attorney in his profession; to which may be added the general ability of the client to pay and the pecuniary benefit derived from the services': Hanley v. Waxman, 80 Pa. Superior Ct. 274, 276; Robbins v. Weinstein, 143 Pa. Superior Ct. 307, 314, 17 A. (2d) 629 . . ."

At the trial of the case now before this court, the only witness who testified in support of plaintiff's claim was plaintiff himself. He described in minute detail the preparation he made for the jury trial in Lehigh County, the successful argument made by him before the Lehigh County court in support of the jury's verdict, the briefs he subsequently prepared and argued in the Supreme Court of Pennsylvania, as well as his expeditious manner of presenting the commission's check as soon as possible to prevent the further accrual of "detention damages." Plaintiff attached to his complaint and testified with regard to an 18 page itemization (exhibit A) of his conferences, telephone calls, correspondence, court appearances and various other matters which set forth in great detail the professional services rendered by him and his associates and stenographic staff for the period July 11, 1957, to the date of the invoice which he submitted when he filed his complaint on October 26, 1960. Plaintiff further testified that he believed he may have spent about 1,000 hours on the case from beginning to the end. If this estimate is substantially correct, it would be equivalent, as the commission points out, to about six months solid work, eight hours per day, five days a week.

Defendant commission called two lawyers to testify to the value of plaintiff's services. These witnesses were John Sweezy, who is a member of the Dauphin County bar and has been employed by the Pennsylvania Turnpike Commission for about three years in

its Right-of-Way Division, first as assistant and presently chief counsel. The other witness was Edwin K. Kline, Jr., a member and past president of the Lehigh County bar. Before discussing their testimony, it should be noted that Henry E. Harner, chief counsel for the Pennsylvania Turnpike Commission, stated in his summation to the court that: ". . . We would like it to be understood that we in no wise question the competency or the ability of the plaintiff lawyer in this case. . . . Mr. Coleman very competently conducted this trial before the jury; no question about that. He deserves a lot of credit. He did a good job, an excellent job, and I have nothing but praise for his conduct of the jury trial. But I do have some criticism of the fact that he waited until the jury trial to take over and represent the Commission properly, as it had a right to expect. . . ."

Mr. Sweezy testified that his position as counsel for the Right-of-Way Division of the commission required him to review all the billings that came in from the lawyers in the field for their services in land condemnation cases; that he has handled many right-of-way matters and that he is thoroughly familiar with them; that he has dealt with lawyers in practically all parts of the Commonwealth, including the County of Allegheny, and also Luzerne, Lackawanna and the other counties in which the northeast extension of the turnpike is located. It was Mr. Sweezy's opinion that the reasonable value of plaintiff's services in the Fetherolf case is $7,500.

Edwin K. Kline, Jr., testified that he has been a member of the Lehigh County bar since 1934 and has been admitted to practice before the Supreme and Superior Courts of Pennsylvania, the United States District Court and the Third Circuit Court of Appeals. He is a graduate of Muhlenburg College, the

University of Pennsylvania School of Law and was admitted to practice in 1934. He is solicitor and a director of the First National Bank of Allentown. He has had wide experience as a trial practitioner in Lehigh County and has represented townships and handled road condemnation matters and also represented the Lehigh-Northampton Airport Authority from 1945 to 1960, which condemned land worth about $1,000,000. Mr. Kline has represented private owners in land condemnation matters of which 30 or 40 culminated in a hearing before boards of view and 5 to 10 cases in a jury trial. Mr. Kline is former president of the Lehigh County Bar Association and vice chairman of the Allentown Authority, which owns the water and sewerage systems of the City of Allentown, and is a member of the zoning board of adjustment of that city. Mr. Kline heard all of the testimony given by plaintiff in this court and was of the opinion that the reasonable value of plaintiff's services is $14,000.

We have read the record and briefs of counsel which were submitted to the Supreme Court of Pennsylvania. We have also read the charge of Judge Koch to the jury and his opinion which was affirmed by the Supreme Court, as heretofore stated. The record clearly shows that plaintiff performed his work in a most efficient manner. He was the sole counsel appearing of record for the Turnpike Commission and was opposed at the trial and in the argument on appeal before the Supreme Court by skillful and experienced adversaries.[3]

We have also given consideration to the Canons of Professional Ethics, paragraph 12, page 11, adopted

---

[3] Appearing for the landowner were William B. Butz and Robert K. Young of the Lehigh County bar and Philip Price of the Philadelphia bar.

by the American Bar Association in October 1948, excerpts of which are attached to plaintiff's brief and also are set forth in Maticic v. Abbott, 73 D. & C. 425, 426, 427 (1950), Luzerne Co., Flannery, J. These canons reiterate the rules enunciated by the appellate courts of Pennsylvania in determining the amount of a lawyer's fee and declare, inter alia, that:

" 'In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. . . .

" 'In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

" 'In determining the customary charges of the Bar for similar services, it is proper for a lawyer to consider a schedule of minimum fees adopted by a Bar

Association, but no lawyer should permit himself to be controlled thereby or to follow it as his sole guide in determining the amount of his fee.

" 'In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade.' "

When requested by the court to state what value the court should give to Mr. Kline's testimony, the turnpike Commission's chief counsel, with commendable frankness, replied: "I say the court should give the highest consideration to Mr. Kline's testimony." However, it was Mr. Harner's considered judgment that "the true value of Mr. Coleman's services in this case lies somewhere between $7,500 and $14,000"; that Mr. Sweezy had a greater and more intimate knowledge of the Fetherolf case than Mr. Kline because Mr. Sweezy had been connected with the case almost from its beginning and was in a position to know what other lawyers in communities comparable to Lehigh County charged for similar services.

It cannot be denied that this was a case of importance to the Commonwealth as well as to the landowner. The testimony as to the damages sustained varied widely. The landowner's expert witnesses swore that he sustained damages ranging from $175,000 to $217,000 while the testimony of the Turnpike Commission's expert witnesses placed the damage at between $40,000 and $45,000. Immediately before and during the trial, however, defendant commission authorized plaintiff to settle the case in amounts ranging from $75,000 to $85,000. These offers were rejected by the landowner who refused to accept less than $160,000. The fact that the jury's verdict was $49,000 for the land damages and $10,355 (subsequently increased by the court to $15,557.50, supra), for "detention damages," is striking evidence, in our

opinion, of the skill with which the trial was conducted by plaintiff. Moreover, he was successful in sustaining the verdict in the lower court as well as in the Supreme Court and in opposing the landowner's motion for reargument.

After careful consideration of all the evidence and the able arguments of counsel for the parties, we are of the opinion that the reasonable value of plaintiff's services is $14,000, to which should be added the sum of $97.15 for reimbursement for out-of-pocket expenditures made by plaintiff on behalf of defendant commission.

*Order*

And now, July 20, 1961, judgment is entered in favor of Irving W. Coleman and against defendant, Pennsylvania Turnpike Commission, in the amount of $14,000, together with $97.15 reimbursement for out-of-pocket expenses, making a total of $14,097.15.