# Matos v. Geisinger Medical Center

450

*Michael D. Shaffer*, for plaintiff.

*Anna Marie S. Bryan*, for defendants Geisinger Medical Center, Michael A. Fitxpatrick, M.D. and Richard T. Davies, Jr., PA-C.

*James P. Riff*, for defendants Alley Medical Center, David Y. Go, M.D. and Kyle C. Maza, PA-C.

NORTON, *J.*, March 12, 2014—At issue are the defendants' motions for recusal of the undersigned filed on November 27, 2013 and December 2, 2013 (the "motions"). The present case alleges that Westley Wise presented to the defendants' health care institutions on January 21, 2011 and January 24, 2011 for a psychiatric evaluation, and that Mr. Wise and/or his family stated that he had a violent psychiatric disorder and that the defendants were requested to admit Mr. Wise to a psychiatric unit.

The plaintiffs allege that the defendants both released Mr. Wise without admission or proper treatment, and that Mr. Wise proceeded to kill the plaintiffs' decedent, Jessica L. Frederick, on January 24, 2011.

On November 6, 2013, oral argument occurred on the defendants' preliminary objections. An opinion and order disposing of said preliminary objections was issued on November 7, 2013 and filed on November 8, 2013. As noted at footnote 1 of said opinion, the parties agreed that no hearing, and thus, no record, was necessary.

At the beginning of argument on November 6, 2013, the undersigned noted that he had been the District Attorney of Columbia County from January 5, 2004 to January 2, 2012. In an effort to be completely candid, the undersigned disclosed that, in 2006, the undersigned prosecuted Mr. Wise on account of an assault upon Jennifer Karns in Columbia County (at the time, the undersigned was not sure of Ms. Karns' name). Mr. Wise is the actor who has been convicted, through a guilty plea in Montour County before the honorable Thomas A. James, Jr., P.J., of murdering the plaintiff's decedent in the present case. On November 6, 2013, at oral argument, the undersigned disclosed that he recalled a habeas corpus hearing in the 2006 Columbia County prosecution, in which the victim, Jennifer Karns, denied 42 times that she had any recall of the incident which left her with a knife wound to the neck. At no time did the undersigned state that he had a "vivid memory" of the facts behind the Columbia County criminal acts of Westley Wise. Until the motions were filed, the undersigned had an average recollection of the

2006 case, mainly that it involved a knife attack, that, at the habeas corpus hearing, the victim denied 42 times that she recollected what occurred and that Westley Wise professed to have some mental illness (this number stuck with the undersigned due to his disappointment at Ms. Karns' denial of any memory, and his review of the transcript to determine that particular number). The undersigned does not believe that any psychiatric or medical records of Mr. Wise were secured by him when he was district attorney or that he otherwise reviewed any such records.

At the argument of November 6, 2013, after the disclosure, the undersigned stated that, if anyone had an objection, they should articulate it at that point. No express objection was voiced and argument proceeded.

Eventually, the topic of the argument turned to the plaintiffs' demand for punitive damages and the defendants' demurrer to that claim. In the midst of argument and the interchange between counsel and the undersigned sitting as judge, the undersigned made statements alluding to his belief that he had to accept all allegations of fact made in the complaint as true for purposes of considering a demurrer, and that, if true, there could be a question of fact as to whether the defendants' conduct was wanton and willful. At that point, with the undersigned having "signaled" his eventual decision on the demurrer to punitive damages, Geisinger's counsel questioned the undersigned's ability to be objective, and she stated, for the first time, that the undersigned would be a witness in the present case. As argument concluded, Geisinger's counsel asked what the undersigned would do on the issue of recusal, and the

undersigned stated that, if he determined that recusal was appropriate, he would do so. It is important to note the context after the undersigned "signaled" that he was not going to dismiss the punitive damages claim: There were questions as to the undersigned's ability to be objective and a relative circling around the issue of recusal, but, contrary to claims by Geisinger's counsel, there was no motion for recusal expressed on November 6, 2013. This was verified by plaintiffs' counsel and the undersigned at the hearing on the motions on January 24, 2014. It is also clear that Geisinger's counsel's statement that the undersigned would be a witness in the present case was manipulative and tactical in nature, because that threat only came after the undersigned professed an inclination to permit the claim for punitive damages to continue. As a result, this manipulative tactical maneuver was presented in bad faith.

The motions served to refresh some memory in the undersigned regarding his 2006 Columbia County prosecution of Mr. Wise. In that case, Mr. Wise pled guilty to simple assault after the granting of a habeas corpus motion as to attempted murder and aggravated assault counts. The dismissal of the attempted murder and aggravated assault counts greatly reduced the viability of the Commonwealth's case and left only misdemeanor charges, including simple assault. The motions also attach an omnibus pretrial motion filed on behalf of Mr. Wise in the 2006 Columbia County prosecution, part of which was a motion for psychiatric examination (Geisinger motion Ex. E). Due to the granting of the habeas corpus motion and the guilty plea to simple assault, no hearing

ever occurred with regard to the motion for psychiatric examination. All that occurred was that the defendant, Mr. Wise, alleged in his motion for psychiatric examination that he had "psychiatric problems" and a "mental illness." The undersigned was only aware of the allegations of a mental illness, and never heard or saw any proof of the allegations.

To further ensure full disclosure, the undersigned ordered a transcript of Mr. Wise's guilty plea hearing of September 11, 2007 in the Columbia County 2006 prosecution. This was done not because the undersigned remembered what occurred on that date, but only because the undersigned is aware that all criminal defendants are asked about mental illness as part of a standard guilty plea colloquy. As described in the order of February 24, 2014, until that transcript was produced, the undersigned had no awareness or memory of the nature of the mental illness from which Mr. Wise professed to suffer. The transcript reveals the simple, one word answer: "Bipolar." Mr. Wise and his attorney professed that Mr. Wise had that illness under control. Even though the undersigned has read the transcript, he has no independent recollection of the guilty plea hearing or of any specific mental illness allegedly suffered by Mr. Wise, and that fact would not be known to the undersigned presently if it were not for the filing of the motions. The undersigned was present for the Commonwealth at Mr. Wise's guilty plea in Columbia County on September 11, 2007. Contrary to the unfounded statements by Geisinger's counsel, the undersigned, as district attorney, did not conduct any investigation into the mental status of Mr. Wise. That was for the court to do

at Mr. Wise's guilty plea hearing of September 11, 2007, and the court conducted that colloquy. The relevant part of the transcript has been made a part of the record for consideration of the Motions, pursuant to the terms of the order of February 24, 2014 and the lack of any objection to the quoted portions of the transcript.

Mr. Wise pleaded guilty to third degree murder in Montour County and was sentenced on December 12, 2011 (Geisinger motion ex. J). The undersigned was never interviewed for the Montour County prosecution of Mr. Wise and did not testify at any juncture. The undersigned did not preside over any portion of that case (the undersigned was not sworn is as judge until January 2, 2012). The undersigned had no professional contact with the Montour County prosecution of Mr. Wise.

After the motions were filed, a hearing on the motions was conducted on January 24, 2014. At that hearing, although she was painfully evasive after repeated questions by the court, counsel for Geisinger admitted that the undersigned did not state that he had a "vivid memory" of the 2006 prosecution of Mr. Wise, despite counsel asserting those words in her brief. When pressed on what the undersigned could possibly be called upon to testify to in the present case, Geisinger counsel was again vague and evasive and gave no response of substance. The fact is that the undersigned was not involved in the Montour County prosecution for the murder out of which this civil action grew.

The hearing of January 24, 2014 also revealed that, as yet, there has been very limited discovery in the present

case, and the defendants cannot know, at this time, whether the fact of Mr. Wise's mental illness will be disputable, in good faith, or, conversely, whether there will be indisputable evidence of psychiatric treatment. During the hearing, the undersigned asked Geisinger counsel if Mr. Wise's mental illness was going to be a disputed fact, and defense counsel responded in the affirmative, but provided no cogent response when the undersigned asked how they can answer that without having viewed his mental health treatment records.

The parties have both demanded a jury trial, therefore, the undersigned will not be the fact finder in this civil case.

Canon 3.C.(1)(b) of the Pennsylvania Code of Judicial Conduct requires disqualification of a judge where the judge "...served as a lawyer in the matter in controversy...." It is clear that the undersigned did not serve as a lawyer in this "matter," whether the present lawsuit, or in the criminal prosecution of Mr. Wise which arose out of the subject of this lawsuit, i.e., the murder of Jessica L. Frederick,

Canon 3.C.(1)(a) requires disqualification of a judge where the judge has a "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding...." The undersigned has no personal bias or prejudice regarding any party to the present action.

Applying the language of Canon 3.C.(1)(a), the undersigned does not have any personal knowledge of disputed evidentiary facts concerning the present case.

Geisinger's counsel states that the undersigned has personal knowledge of Mr. Wise's mental illness. The undersigned has never had any personal contact with Mr. Wise and has no personal experience regarding his alleged mental illness. Even professionally, in or out of court, while district attorney, the undersigned never reviewed medical or psychiatric records relating to Mr. Wise, never examined a witness regarding Mr. Wise's alleged mental illness and never heard any such examination. The most that can be said is that the undersigned, at one time (since forgotten), heard Mr. Wise state during his guilty plea that he suffered from "bipolar," and that, in his 2006 prosecution, Mr. Wise's attorney alleged, as the plaintiff alleges in the present case, that Mr. Wise suffers from a "mental illness" and/or "psychiatric problems." That does not amount to "personal knowledge."

Beyond the lack of personal knowledge, it is premature for the defendants to assert that the fact of whether Mr. Wise suffered from a mental illness will be contested. Little or no discovery has occurred in the present case. Defense counsel cannot know whether they can contest that fact in good faith. They have not requested, received or reviewed any mental health records pertaining to Mr. Wise. For all defense counsel may know, their own clients' medical records may contain mental health diagnoses for Mr. Wise. To assert recusal without any foundation in fact to determine if the fact will be disputed or disputable is another show of bad faith.

A justice of Pennsylvania Supreme Court was not required to recuse himself in an appeal of a defendant

whose prior appeals were pending when the justice was the district attorney of Philadelphia County, even though the justice's name was on the appellate brief as an attorney for the Commonwealth in the prior appeal in the same case. *Commonwealth v. Abu Jamal*, 553 Pa. 569, 720 A.2d 121 (1998). The party requesting recusal has the burden of proving bias, prejudice, unfairness, or personal knowledge of disputed evidentiary facts which raises a substantial doubt as to the judge's ability to preside impartially. *Abu Jamal*, 720 A.2d at 89.

Under the existing practice in Pennsylvania, recusal has been a matter of individual discretion or conscience and only the jurist being asked to recuse himself or herself may properly respond to such a request. *Commonwealth v. Jones*, 541 Pa. 351, 353, 663 A.2d 142, 143 (1995), citing: *Commonwealth v. O'Shea*, 523 Pa. 384, 407, 567 A.2d 1023, 1034 (1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990); *In re Crawford's Estate*, 307 Pa. 102, 108-09, 160 A. 585, 587 (1932).

The burden is on the party seeking disqualification to prove bias: *Commonwealth v. Council*, 491 Pa. 434, 421 A.2d 623 (1980). A judge's refusal to recuse herself or himself will be overturned only if there has been an abuse of discretion. *Crawford's Estate, supra*. The question is one which is particularly ill suited for review by appellate courts. Thus, the issue of recusal is addressed particularly and peculiarly to the conscience and sound discretion of the judge. It is his inquiry. *Sprague v. Walter*, 22 Pa.D. & C.3d 564, 575 (Pa. Com. Pl. 1982) (Judge had been outspoken in criticism of a litigant/newspapers'

irresponsible journalism, but that did not disqualify him from defamation case against newspaper).

It has been held that, to be sufficient for disqualification, a bias must be a personal one arising outside the four corners of the courtroom. *See*: *Hodgson v. Liquor Salesmen's U. Loc. No. 2 of State of N.Y.*, 444 F.2d 1344 (2nd Cir. 1971); *U.S. v. Bray*, 546 F.2d 851 (10th Cir. 1976). Any alleged bias and prejudice must not arise out of evidence presented at trial or out of an earlier proceeding or from the fact that the judge has definite views on the law or from an impersonal prejudice which goes to the judge's background, associations, learnings or experience. *Com. v. Lawrence*, 211 Pa. Superior Ct. 279, 239 A.2d 209 (1967); *U.S. v. Gilboy*, 162 F. Supp. 384 (M.D. Pa. 1958). Adverse rulings in a previous proceeding, whether or not correct, and the judge's statements of reasons, do not constitute a bias requiring recusal and are insufficient to warrant a disqualification.[1] *U.S. v. Bray*, *supra*. A "trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can be reasonably questioned." *Commonwealth v. Goodman*, 454 Pa. 358, 361, 311 A.2d 652, 654 (1973).

In *Commonwealth v. Darush*, 459 A.2d 727 (Pa. 1983), it was held that a person who prosecuted a particular defendant in a criminal case as a district attorney is not disqualified from adjudicating a later and separate case involving that same defendant as a judge. It was also held

---

1. That would include the proposition that the undersigned is not disqualified because of the opinions expressed herein or in the courtroom.

that a trial judge need not recuse himself from conducting a criminal jury trial of a defendant, where he allegedly made disparaging remarks regarding the defendant when he was DA, but that it would not be appropriate to conduct sentencing.

Applying *Darush, supra,* to the present case, a jury will be determining both liability and damages, leaving no fact finding to the undersigned, such as would occur at a criminal sentencing. The only evidence the undersigned heard was in the courtroom on September 11, 2007 at Mr. Wise' guilty plea in the 2006 Columbia County prosecution, when Mr. Wise stated that he suffered from "bipolar," and he and his attorney immediately said it was under control, all in answer to a guilty plea colloquy posed by the honorable Thomas A. James, Jr., P.J. As stated, the undersigned does not have an independent recollection of that event. All the undersigned recalls regarding the mental state of Mr. Wise is that his attorney alleged a mental illness, the same fact alleged by the plaintiff in the present case. The undersigned realizes that these are presently only allegations.

Despite the hyperbolic and inaccurate descriptors posited by Geisinger's counsel, the undersigned has no "vivid memory" (Geisinger bf., p. 4) of the facts behind Mr. Wise's criminal actions in 2006, and has no memory of, and had no exposure to, the 2011 murder prosecution of Mr. Wise in Montour County. The undersigned was no more "intimately involved" (Geisinger bf., p. 3) in the 2006 prosecution of Mr. Wise than the other approximate 1,100 cases he prosecuted that year, or the approximate

8,800 cases his office prosecuted in his eight (8) years as district attorney.

Although Geisinger counsel, in her brief, cited media attention paid to the 2006 Columbia County prosecution, she presented absolutely no evidence of media coverage, in her original brief below, at p. 10, Geisinger counsel asserts that the undersigned, as district attorney in 2006, "had access to relevant information, not publically available, that tends to demonstrate, or refute Wise's mental illnesses...." That is pure speculative fluff and irresponsible to assert. The undersigned did not subpoena or otherwise obtain any mental health records pertaining to Mr. Wise, therefore, the undersigned did not have any such information.

After the evidentiary record was closed on motions at the end of the hearing on January 24, 2014, the Geisinger defendants saw fit to serve a "supplemental brief" which was received by the undersigned on March 6, 2014. Counsel for the Geisinger defendants attached an article from a local newspaper which was allegedly published on March 2, 2014. The article was not entered into evidence, should not be considered for purposes of the motions and, as such, was improper to present for consideration. Its authenticity and accuracy have not been subject to cross-examination, and there has been no opportunity for argument regarding relevance and admissibility.

Nonetheless, in continuing to be open and candid, the undersigned will analyze the effect of the article. Consideration of the article does nothing to support the motions. The article is a typical newspaper report, which

summarizes the allegations in the present case, which remain allegations. The article eventually summarizes the 2006 Columbia County prosecution, the victim's testimony during which she professed a lack of memory, and the plea agreement to simple assault. The article also notes that the defendants had moved to recuse the undersigned due to the undersigned being the prosecutor of the 2006 Columbia County case against Mr. Wise. Of course, that aspect of the article is of the defendants' own doing through the filing of the motions.

In its supplemental brief, the Geisinger defendants continued with their assertions of unfounded and unproven facts and suppositions. In the supplemental brief, the Geisinger defendants state: "The publication of this article refreshes the public's memory about Wise's previous violence and judge Norton's role as prosecutor for that incident." (Suppl.). Bf., p. 2). "Public memory," in itself, is not an element to be considered for purposes of a recusal motion. The only consideration is whether a significant minority of the lay community could reasonably question the court's impartiality. *Darush*, 459 A.2d at 732. Defense counsel do not speak for the community. Defense counsel are in no position to interpret and present "public memory" as fact. The article appeared because of the filing of the motions. A judge cannot be required to recuse himself or herself in present litigation simply because he participated in prior litigation involving a witness in the present litigation, or because the prior litigation was allegedly notorious.[2]

---

2. It cannot be overemphasized that there is no evidence of record that the 2006 Columbia County prosecution was especially notorious.

The supplemental brief also states: "The juxtaposition of the two cases of violence gives the impression to the reader that an opportunity to protect the public was missed when a plea agreement was reached in the 2006 attack that reduced the charge to simple assault.... But moving defendants can reasonably deduce that there was significant criticism of the plea agreement at the time it was offered in the relatively small tight-knit and largely rural community which was unaccustomed to murder." (Suppl. bf., p. 2-3). The Geisinger defendants' statement of claiming to be able to "deduce" facts out of thin air is overreaching. Again, defense counsel presumes to be the interpreter of public opinion in the absence of any evidence of the same, whatsoever. In fact, the undersigned feels no pressure or regret regarding the plea agreement in the 2006 Columbia County prosecution of Mr. Wise. The undersigned recollects no public outcry or complaints regarding his service as prosecutor in the 2006 Columbia County prosecution of Mr. Wise. This was probably because there was no choice in accepting the plea agreement: The Commonwealth, through the undersigned, went through a full hearing on the habeas corpus motion, the victim professed no memory of the identify of the perpetrator who inflicted her wounds and the felony counts were dismissed. Contrary to the dramatic, but false, facts deduced by Geisinger counsel in her briefs, the undersigned did not "make a determination as to Wise's mental state..." (Suppl.

---

There is absolutely no evidence in the present case of the content of any 2006-2007 news accounts of the 2006 prosecution of Mr. Wise. It is acknowledged by the undersigned that there were news accounts, but the undersigned has no recollection of any accounts that were critical of the undersigned.

bf., p. 3) prior to negotiating the plea agreement. In fact, it was up to the court at the time, through a "guilty plea colloquy" to make a record that the defendant Mr. Wise's mental state was sufficiently stable to enter a knowing and voluntary plea. Contrary to the supplemental brief, the undersigned took no "actions ... to ensure that Wise was of sound mind to reach a plea agreement..." (Suppl. bf., p. 4). Whether Mr. Wise continued to pose "a danger to the community" was not in play at that point and was not an element of the misdemeanors which remained after the felonies were dismissed. Without the victim's testimony, the Commonwealth would not even have been able to sustain its burden of proof on the simple assault count, therefore, if the defendant, Mr. Wise, was going to admit to being the perpetrator in a guilty plea, that was the only option to secure a conviction. Whether Mr. Wise was, or was not, a danger to the community did not change that conclusion.

In summary regarding the argument in the supplemental brief, the Geisinger defendants are conjuring up facts which do not exist, and taking those conjured facts and professing to be the articulator of public sentiment. There was no public outcry in 2007 when Mr. Wise pled guilty to simple assault, the undersigned feels no threat of a public outcry, and the undersigned did not investigate or have any detailed knowledge of Mr. Wise's mental state or illness. As to plaintiffs' counsel's alleged statement in the article, and his alleged link between the 2006 assault and the 2011 murder, plaintiffs' tactics are up to the plaintiffs and their counsel. Plaintiffs' possible choice to try to link the two does not make the undersigned a material witness

in the present civil action. Of record in the present case is plaintiffs' counsel's statement that the 2011 Montour County murder had nothing to do with the 2006 Columbia County prosecution (1/24/14 N.T. 12). A lawyer may say any number of things to the press, but he or she is bound by what he or she states on the record in court.

The Geisinger defendants did not assert that they would seek to call the undersigned as a witness until, at oral argument on a demurrer, the undersigned disclosed his inclination to allow plaintiffs' punitive damages claim to continue. That was a clear bad faith tactical move to attempt to remove the undersigned and "judge shop" for a jurist who might dismiss the punitive damages claim. This harkens to the language of *Sprague, supra,* in which the court stated: "...the petition for recusal ...are replete with error, exaggeration and distortion and improper and inaccurate innuendo... and ... has ... been adopted with a vengeance by defendants and defendants' counsel for the purpose of achieving a disqualification." *Sprague,* 22 Pa. D. & C.3d at 570.

The issues in the present case will be the standard professional negligence issues: standard of care, causation and damages, and the undersigned will not be the fact finder on those issues. The motions were referred to the honorable Thomas A. James, Jr., P.J., as requested in the motions, and he has declined to intervene. The bottom line is: the undersigned sincerely believes that he can fairly and objectively preside over the present action without bias, prejudice, unfairness, or partiality. The undersigned knows that the present case is about the standard of care

owed, or not owed, by the defendants to the plaintiffs, causation and damages, and is not a re-trial of Westley Wise for the 2006 simple assault for which he was convicted in Columbia County in 2007. The present case arises out of a murder in Montour County in 2011 and a question of professional negligence.

For the foregoing reasons, the motions shall be denied.

## ORDER

And now, to-wit, on this 12th day of March, 2014, upon consideration of the motion for recusal or reassignment portion of the "motion for recusal or reassignment of the honorable Gary Norton and motion for enlargement of time to plead over filed by defendants, Geisinger Medical Center, Michael H. Fitzpatrick, M.D. and Richard T. Davies, Jr., PA-C," filed on November 27, 2013, and "defendants Alley Medical Center, David Y. Go, M.D., and Kyle C. Maza, PA-C motion to join and adopt [Geisinger's motion for recusal]" filed December 2, 2013, on the basis of the reasons set forth in the foregoing opinion, said motions are hereby denied.