720 A.2d 121

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Mumia ABU–JAMAL, a/k/a Wesley Cook, Appellant.**

Supreme Court of Pennsylvania.

Oct. 29, 1998.

---

Leonard I. Weinglass, David Rudovsky, Philadelphia, Daniel R. Williams, New York City, Stephen W. Hawkins, Philadelphia, Rachel H. Wolkenstein, for M. Abu–Jamal.

Catherine Marshall, Philadelphia, Robert A. Graci, Harrisburg, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

**OPINION IN SUPPORT OF DENIAL
OF APPELLANT'S MOTION
FOR RECUSAL**

CASTILLE, Justice.

On August 5, 1996, appellant filed an Application for Recusal requesting that I recuse myself from participating in the consideration or decision of his appeal pending in this Court stating the following concerns (1) I served as an Assistant District Attorney and as the District Attorney of Philadelphia County during certain periods when this matter was being tried or appealed; (2) As a former prosecutor, I allegedly have a "vested interest" in protecting my former colleagues such that I would be unable to judge appellant's claims of prosecutorial misconduct fairly; and (3) during my election campaign for the Supreme Court, I was endorsed by the Fraternal Order of Police ("FOP").

Under the existing practice of this Court, recusal has always been a matter of individual discretion or conscience and only the jurist being asked to recuse himself or herself may properly respond to such a request. *Commonwealth v. O'Shea*, 523 Pa. 384, 407, 567 A.2d 1023, 1034 (1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990); *In re Crawford's Estate*, 307 Pa. 102, 108–09, 160 A. 585, 587 (1931). For the reasons set forth below, in an exercise of my discretion, appellant's application for recusal is denied.

1. *Employment by the District Attorney's Office*

■ Appellant first argues that I should recuse myself because I was employed by the Philadelphia District Attorney's Office throughout the period of his conviction and direct appeal. By way of background, appellant was tried and convicted of the first degree murder of Philadelphia Police Officer Daniel Faulkner in 1982.[1] Although I was employed

---

1. The Honorable Edward Rendell, the current Mayor of Philadelphia, was the duly-elected District Attorney who approved the Commonwealth's pursuit of the death penalty against appellant. He also served as the District Attorney at the time appellant was tried and convicted by a jury in the Philadelphia Court of Common Pleas.

as an Assistant District Attorney in 1982, I did not personally prosecute or otherwise participate in appellant's trial or his direct appeal. I resigned from my position as an Assistant District Attorney shortly after appellant filed his notice of appeal from his sentence of death and did not return to the Philadelphia District Attorney's Office until I was sworn in as District Attorney in January of 1986. At that time, appellant's direct appeal was still pending before the Supreme Court and was argued on January 19, 1988. The Supreme Court affirmed the judgment of sentence on March 6, 1989. *Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846 (1989), *reh'g denied,* 524 Pa. 106, 569 A.2d 915 (1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990), *reh'g denied,* 498 U.S. 993, 111 S.Ct. 541, 112 L.Ed.2d 551 (1990).

Appellant argues that my employment with the District Attorney's Office as an Assistant District Attorney at the time his trial proceeded in 1982 and as the elected District Attorney during part of the period of time that his direct appeal was pending between 1986 and 1989 *per se* warrants my recusal. With respect to my employment as an Assistant District Attorney, I find that there is no basis for my recusal based upon such employment, since I personally neither contributed to, nor participated in, the prosecution of appellant's case. Since I was not involved in any manner in the prosecution of appellant as an Assistant District Attorney, I was not privy to any special information that could possibly hamper my ability to fairly and impartially decide this appeal.

■ Second, appellant argues that my position as the elected District Attorney of Philadelphia while appellant's direct appeal was pending automatically warrants my recusal. However, as I have stated in other matters raising a similar issue,[2] during my tenure as District Attorney from January of 1986 through February of 1991, the Philadelphia District Attorney's office (consisting of approximately 225 attorneys and a total of

---

**2.** See, e.g., *Commonwealth v. Jones,* 541 Pa. 351, 663 A.2d 142 (1995); *Commonwealth v. Cull,* No. 32 E.D. Appeal Dkt.1993 (Pa., filed February 9, 1994); *Commonwealth v. Goodie,* 536 Pa. 38, 637 A.2d 621 (Pa., 1994).

475 staff employees) *each year* disposed of over 65,000 criminal matters and several thousand appeals in both the Superior and Supreme Courts of Pennsylvania, as well as in the federal courts. Given the enormous volume of criminal cases processed in Philadelphia County, it is virtually impossible for any duly-elected District Attorney administering such a caseload to be personally familiar with the details of each and every criminal case and appellate proceeding prosecuted by the over 225 Assistant District Attorneys, Chiefs, or Deputy District Attorneys employed in that office. Indeed, with respect to appellant's matter, despite my position as District Attorney while his appeal was pending, I did not participate personally in the Office's appellate response to his appeal or otherwise gain knowledge of information exclusively within the control of the District Attorney's Office by virtue of my position. The mere placing of my name on the Commonwealth's brief as a formal administrative requirement fails to demonstrate that I was, *per se,* personally and directly involved with the prosecution or appeal of appellant's case such that a claim for recusal would be colorable.

I have not prejudged appellant's matter nor would I prejudge it simply because I served as District Attorney of Philadelphia and had a general responsibility for all matters that fell within my official capacity, this being but one of the hundreds of thousands. Given the absence of personal involvement with appellant's matter while I served both as an Assistant District Attorney and as the District Attorney, and upon review of the relevant case law, recusal is not warranted in this matter.

In *Laird v. Tatum,* 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972), then-Justice William Rehnquist was asked to disqualify himself in a matter that appeared before the United States Supreme Court based upon the fact that, as an Assistant Attorney General in the Department of Justice, he had publicly commented on the subject matter then pending before the Supreme Court (namely, the authority of the executive branch to gather information under the Constitution and federal statutes), and also because he had previously testified as an

expert witness on behalf of the United States Justice Department in United States Senate hearings inquiring into the very same subject. The respondents in *Laird* claimed that Justice Rehnquist's impartiality was "clearly questionable" because of his expert testimony in the Senate hearings, because of his intimate knowledge of the subject matter underlying the allegations before the Court, and because of his public statements about issues related to the pending matter prior to his appointment to the Court. *Laird, supra,* 409 U.S. at 825, 93 S.Ct. 7.

Rejecting respondents' arguments, Justice Rehnquist held that even though he held a high-level supervisory position in the Department of Justice while *Laird* was being investigated and prosecuted within the Department of Justice, his disqualification was not warranted since he personally did not have any advisory role in any matters involving *Laird v. Tatum,* had never signed a pleading or brief regarding the case, and had never personally participated in the trial or appeal of the matter on behalf of the Government. In support of his position that recusal was not warranted, Justice Rehnquist cited *Schneiderman v. United States,* 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, *reh'g denied,* 320 U.S. 807, 64 S.Ct. 24, 88 L.Ed. 488 (1943), a matter in which former United States Supreme Court Justice Murphy did not disqualify himself even though the matter then before the Court had been prosecuted by the Department of Justice while Justice Murphy was the Attorney General of the United States.

Similarly, in *Commonwealth v. Darush,* 501 Pa. 15, 459 A.2d 727 (1983), this Court held that recusal was not required of a trial judge even though the trial judge, formerly serving as the District Attorney of the county, had personally prosecuted the appellant on charges unrelated to the matter presently before him, had taken a statement of a primary witness in the case before him concerning the appellant's charges while he was District Attorney, and had been the District Attorney when the offenses in question were committed by the appellant. The appellant argued that the trial judge should have recused himself because of his previous prosecutorial role and

prior contact with the appellant. This Court, however, rejected the appellant's argument:

[W]e have never held and are unwilling to adopt a *per se* rule that a judge who had participated in the prosecution of a defendant may never preside as judge in future unrelated cases involving that defendant. Absent some showing of prejudgment or bias we will not assume a trial court would not be able to provide a defendant a fair trial based solely on prior prosecutorial participation.

*Commonwealth v. Darush*, 459 A.2d at 731.[3]  *Accord Commonwealth v. Edmiston*, 535 Pa. 210, 229–30, 634 A.2d 1078, 1088 (1993); *In re Crawford's Estate*, 307 Pa. at 109, 160 A. at 587.

Here, unlike the trial judge in *Darush*, I had no personal connection with appellant's matter. Thus, as in *Darush*, since there is no indication that I had any personal connection with appellant's matter while I was an Assistant District Attorney or as the District Attorney of Philadelphia County, recusal is not warranted. Moreover, recusal is further unwarranted where, as here, there has been no allegation or showing of any specific prejudgment or bias against appellant. *Commonwealth v. Darush*, 459 A.2d at 731. As this

---

**3.** It should be noted that even though the matter was remanded for a new trial in *Darush*, it was solely on the grounds that the appellant averred that while running for election for judge, the judge allegedly made statements about the appellant which could conceivably evidence personal bias against the appellant and for which the judge had no recollection of such statements. Here, there is no evidence that I made personal statements to the public suggesting a personal bias towards appellant and I do not recall having ever made any such statements. Appellant's speculation that I must have made comments on this case because of its high profile nature is insufficient to require that I step down from performing my sworn duties as a Justice of this Court. Unlike the intensity attendant to a high publicity trial or hearing, the appellate process is substantially more subdued. The witnesses have testified, the evidence has been ruled upon, and the orders entered. Appellate decisions are made from cold records and prior rulings. The stimuli of live witnesses and media coverage of a public trial or hearing, which may have prompted my predecessor and successor to comment publicly on appellant's case, no longer existed once the appellate process began, which may explain why appellant is unable to point to any public comments by me regarding this matter.

Court stated in *Reilly v. Southeastern Pennsylvania Transp. Authority*, 507 Pa. 204, 489 A.2d 1291 (1985)

> It is incumbent upon the proponent of a disqualification motion to allege *facts* tending to show bias, interest or other disqualifying events, and it is the duty of the judge to decide whether he feels he can hear and dispose of the case fairly and without prejudice because we recognize that our judges are honorable, fair and competent.

*Reilly*, 507 Pa. at 221–22, 489 A.2d at 1300 (emphasis added). As discussed below in more detail, appellant has failed to allege facts that would demonstrate bias, interest or other disqualifying events. Hence, this argument fails to compel my recusal. *See* Commentary to Canon 3 of the Code of Judicial Conduct.[4]

4. The Commentary to Canon 3, which the American Bar Association included out of recognition that an attorney's association with a governmental agency warrants special considerations, provides: "A lawyer in a governmental agency does not necessarily have an association with other lawyers employed by that agency within the meaning of this subsection . . .".

Professor E. Wayne Thode, the reporter for the A.B.A. Committee who testified before the Senate Judiciary Committee during the 93d Congress in connection with the Code of Judicial Conduct, explained the purpose behind the Commentary to Canon 3(C)(1)(b) as follows:

> The commentary clarifies the status of the judge who was formerly a lawyer in a governmental agency. An agency, for example, the Justice Department, is not fully equated with a private law firm, in that a former agency lawyer is *not* considered to have been associated with all other lawyers in the agency.

*Muench v. Israel*, 524 F.Supp. 1115, 1117 (E.D.Wis.1981). (emphasis added).

In applying the Commentary to Cannon 3, the Honorable Robert W. Warren in *Muench v. Israel* declined to recuse himself even though he had served as the Attorney General of Wisconsin during the time the appellant appealed his criminal conviction to the Wisconsin Supreme Court. The state, as the respondent, was formally represented by then-Attorney General Warren. Nevertheless, Judge Warren did not recuse himself from hearing the petitioner's federal petition for a Writ of Habeas Corpus since he had not personally participated in the previous state appellate process other than in his official, formal capacity. Taking guidance from the United States Supreme Court, the court noted that:

> [H]istory is replete with examples of United States Supreme Court Justices who had previously served in the Justice Department and later declined recusal in cases which had been handled by the Department during their tenure as government attorneys but with

As District Attorney of Philadelphia, I took an oath to uphold the Constitution of the United States and of this Commonwealth. I took a similar oath at the beginning of my tenure on this Court. I do not now take, and never have taken, such oath lightly. "Laws not enforced cease to be laws, and rights not defended may wither away." Thomas E. Moriarty, American educator, Laurence J. Peter, *Peter's Quotations* (1977).

■ Appellant next claims that because of my prior experience as a prosecutor, I have a "vested interest in defending" my former colleagues and that this "interest" would prevent me from fairly determining appellant's allegations of prosecutorial misconduct by attorneys in the Philadelphia District Attorney's Office. Appellant attempts to support this claim with references to entirely unrelated matters. Specifically, appellant claims that my public support of a particular Assistant District Attorney in the wake of certain judicial rulings in an unrelated case somehow affects my ability to judge the behavior of other prosecutors who handled this case. Such a claim cannot rationally be addressed because there is simply no logical connection between my public comments regarding a particular prosecuting attorney in a completely different matter, who had no connection with this case, and my determination of this matter.

I would further note that appellant's argument that this supposed "vested interest" would prevent me from rendering rulings favorable to a defendant with respect to claims of prosecutorial misconduct in the Philadelphia District Attorney's Office is belied by the Majority Opinion I authored in

which their connections were purely formal. Thus ... the standard for recusal followed by most Supreme Court justices who had previously served as United States Attorney General was whether their prior involvement in a case involved something more than a mere pro forma relationship.

*Muench v. Israel*, 524 F.Supp. at 1118 (footnote omitted). *See also In re Searches Conducted on March 5, 1980*, 497 F.Supp. 1283, 1290 (E.D.Wis.1980) (recusal not required even though judge formerly served as the Attorney General of Wisconsin during the investigation and prosecution of petitioners and had been sued by one of the petitioners in an unrelated matter).

*Commonwealth v. LaCava,* 542 Pa. 160, 666 A.2d 221 (1995). In *LaCava,* which appellant does not acknowledge in his Application for Recusal, the Court determined that an Assistant District Attorney in the Philadelphia District Attorney's Office had engaged in misconduct in the death penalty phase of a case involving the murder of a Philadelphia police officer such that a reversal of the death penalty was warranted. Despite appellant's argument to the contrary in the instant matter, my rulings, whether adverse to or favorable to an appellant, or whether they involve my former office or any other prosecuting agency, are based solely upon the law. If the law warrants relief in appellant's pending matter, then the law shall govern.

■ Appellant's final argument in support of his request that I recuse myself is that recusal is necessitated because I was endorsed by Lodge 5 of the Fraternal Order of Police several years ago during the electoral process. This argument similarly fails to convince me that a recusal is warranted.

At the outset, I note that the very same FOP which endorsed me during earlier electoral processes also endorsed Mr. Chief Justice John P. Flaherty, Mr. Justice Ralph Cappy, Mr. Justice Russell M. Nigro, and Madame Justice Sandra Schultz Newman. If the FOP's endorsement constituted a basis for recusal, practically the entire court would be required to decline participation in this appeal. Appellant's stated conviction that the FOP's endorsement of my candidacy warrants my recusal is belied by appellant's failure to seek the recusal of any other Justice due to an FOP endorsement in their respective elections to this Court. The FOP is not a party to this matter (just as it was not party to the *LaCava* matter) and appellant's argument that my recusal is warranted because of its endorsement of me in particular is not compelling.

Furthermore, appellant ignores the fact that, while I was District Attorney, despite having received endorsement from the FOP during my electoral campaign for the position of District Attorney, my office either initiated or assisted in

extensive investigations and proceedings against other members of the FOP.[5] Hence, appellant's position that my endorsement by the FOP would prevent me from looking at this matter with judicial impartiality is, once again, belied by the actual record, which amply demonstrates that endorsements do not, and have never, impaired my ability to apply the law fairly to the circumstances at hand regardless of the persons involved.

There are a total of seven Justices who at present sit upon this Court, the highest appellate court in this Commonwealth. In addressing the special concerns that arise when a Justice has been asked to recuse or disqualify himself or herself from matters pending before the highest court, Justice Rehnquist remarked in his Memorandum:

> [T]here is no way of substituting Justices on [the highest] Court as one judge may be substituted for another in the district courts. There is no higher court of appeal that may review an equally divided decision of this Court and thereby establish the law for our jurisdiction.

5. Specifically, while I was District Attorney, investigations and legal proceedings were either commenced or pursued against members of the Philadelphia Police Department's narcotics units known as One Squad, Two Squad and Five Squad, among other persons. *See, e.g., Commonwealth v. Cassidy,* 423 Pa.Super. 1, 620 A.2d 9 (1993) (One Squad); *Commonwealth v. Trudell, et al.,* 371 Pa.Super. 353, 538 A.2d 53 (1988) (four officers prosecuted for bribery and criminal conspiracy).

Appellant's contention that the Philadelphia District Attorney's Office, under my administration, disregarded alleged police corruption in the 39th Police District is also unfounded. The District Attorney's Office Special Investigations Unit explored all allegations of police misconduct directed at the 39th District and, based in part upon investigations initiated while I was District Attorney, the widespread corruption was ultimately made public.

Appellant apparently assumes that, because an investigation is not publicly discussed, no investigation is or was underway. Investigations into police corruption, or any other matter of a sensitive nature, must be handled confidentially and carefully to ensure that the collection of credible evidence is not endangered and that the position ultimately taken is well-grounded. As with any matter falling under the province of the District Attorney's Office, only if the District Attorney's Office is confident that it has collected sufficient credible evidence to support a prosecution, or dismissal, should it proceed against or on behalf of a party.

*Laird v. Tatum,* 409 U.S. at 837, 93 S.Ct. 7. These concerns are equally applicable to the Supreme Court of Pennsylvania. Indeed, in *Goodheart v. Casey,* 523 Pa. 188, 565 A.2d 757 (1989), former Chief Justice Nix specifically addressed these same concerns as they applied to a request that a Pennsylvania Supreme Court Justice recuse himself:

> Unlike a trial court where one judge presides, courts *en banc,* panels or *en banc* intermediate appellate courts, the Supreme Court is constituted so as to provide its full complement of seven members to consider all of the matters that come before it. Its responsibility to interpret and develop the law of the Commonwealth mandates that its full membership be available and participate in all matters that come before the Court. A state as diverse in cultures, interests and ethnic stock as this Commonwealth increases the importance of assuring that the questions before this Court receive the reflective judgment enriched by the varied perspectives of its members that participate in reaching that judgment. The expression of concurring and dissenting views assures a more complete exposition of the reasons underpinning the judgment and aids in evaluating the wisdom of the majority position. Quite frequently the dissenting view today becomes the majority view of the future. *Thus, this Court was structured so that, except for good cause, the full complement of the Court should participate in the judgments of this Court. Failure to recuse, standing alone, is not a basis for collateral attack upon a jurist.*

*Goodheart,* 523 Pa. at 201, 565 A.2d at 763–64 (emphasis added).

Because this Court sits as a full court, as does the Supreme Court of the United States, were I to recuse myself, this Court would lack its present full complement of seven justices. Similarly, if I were to recuse myself on all matters pending or initiated while I was District Attorney, potentially over 300,-000 criminal cases would be subject to this Court's review without the benefit of a full Court.

Pursuant to my sworn duties, I respectfully decline appellant's invitation to recuse myself and I will participate in the

582

decision and consideration of appellant's matter without bias or prejudgment. For the foregoing reasons, appellant's request is denied.

## *ORDER*

**AND NOW,** this 29th day of October, 1998, it is hereby ordered that Appellant's Motion requesting my recusal in the matter is DENIED.