J-M03001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WESLEY COOK | : | |
| | : | |
| Appellant | : | No. 290 EDA 2019 |

Appeal from the PCRA Order Entered December 27, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0113571-1982

BEFORE: PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM PER CURIAM: **FILED OCTOBER 26, 2021**

This matter returns to this Court after the Supreme Court of Pennsylvania vacated our earlier decision which found we had no subject matter jurisdiction to entertain the appeal. The Supreme Court ruled that this Court was the proper forum since Appellant is no longer facing a penalty of death. Further, the Supreme Court directed us to apply ***Commonwealth v. Reid***, 235 A.3d 1124 (Pa. 2020).

Mumia Abu-Jamal, formerly known as Wesley Cook, filed this appeal from the orders denying his first four petitions under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, after his appellate rights for all four petitions were reinstated *nunc pro tunc* pursuant to his fifth PCRA petition. Abu-Jamal claims that the prior PCRA courts erred in denying his first four petitions, and raises arguments under the United States and Pennsylvania

Constitutions.[1] Abu-Jamal has also filed a petition for remand to the PCRA court and a petition to expedite the remand, asserting that evidence turned over by the Commonwealth during the pendency of this appeal requires a new hearing.

Additionally, the Commonwealth has filed an application to file a *sur* reply brief. And finally, Maureen Faulkner, the widow of Officer Daniel Faulkner, who was the victim of the homicide Abu-Jamal has been convicted of committing, asks us to allow her to intervene in this appeal.

Based on the following, we conclude that the PCRA court lacked jurisdiction to reinstate Abu-Jamal's appeal rights. We therefore dismiss these appeals as the fifth PCRA petition was untimely. We also deny the Commonwealth's application to file a *sur* reply brief. Lastly, the pending applications for relief filed by Abu-Jamal and Maureen Faulkner are dismissed as moot.

Given our resolution of this matter, we need not dwell on the underlying factual history of this case. A jury convicted Abu-Jamal of the first-degree murder of Officer Faulkner on July 2, 1982. The next day, the jury sentenced Abu-Jamal to death. The Supreme Court of Pennsylvania unanimously

---

[1]Abu-Jamal does not re-raise all of the arguments that were presented in his previous PCRA petitions. Rather, he has re-raised "the claims and arguments that most clearly demonstrate that his trial was fundamentally unfair and violated his rights pursuant to the United States and Pennsylvania Constitutions." Appellant's Brief, at 8.

affirmed Abu-Jamal's judgment of sentence in 1989, and the Supreme Court of the United States denied Abu Jamal's petition for a writ of certiorari in 1990.

Abu-Jamal filed PCRA petitions in 1995, 2001, 2003, and 2009. In each instance, the PCRA court denied any relief on the petitions. Following these decisions, Abu-Jamal was re-sentenced to a term of life in prison without parole. On appeal, Abu-Jamal's sentence to life in prison was affirmed by this Court. **See Commonwealth v. Abu-Jamal**, 3059 EDA 2012, 2013 WL 11257188 (Pa. Super. July 9, 2013) (unpublished memorandum).

In 2016, Abu-Jamal filed his fifth PCRA petition seeking the reinstatement of his appellate rights from his first four PCRA petitions pursuant to **Williams v. Pennsylvania**, 136 S.Ct. 1899 (2016). In that case, a Philadelphia jury had convicted Terrance Williams of first-degree murder in 1986 and sentenced him to death. At the time, the Honorable Ronald Castille was the District Attorney of Philadelphia, and provided written authorization for his Assistant District Attorney to seek the death penalty for Williams. In 2012, Williams filed a PCRA petition seeking, among other things, a new penalty-phase trial. After the PCRA court granted Williams a new penalty-phase trial, the Supreme Court of Pennsylvania, led by then Chief Justice Castille, reversed and reinstated the death penalty. The Court denied Williams's motion for recusal of the Chief Justice based upon his participation in the prosecution of Williams, and Chief Justice Castille penned a concurrence

which strongly condemned the history of Williams's counsel, the Federal Community Defender Office.

Williams appealed to the Supreme Court of the United States, which analyzed Chief Justice Castille's participation in reviewing the Commonwealth's appeal from the Order of the PCRA court which granted a new penalty-phase trial. The Supreme Court held that Chief Justice Castille's failure to recuse himself from the review of the Commonwealth's appeal "presented an unconstitutional risk of bias." *See Williams*, 136 S.Ct. at 1907. The Supreme Court of the United States therefore vacated the Pennsylvania Supreme Court's decision and remanded the matter for the Pennsylvania Supreme Court to reconsider the appeal without the participation of Chief Justice Castille. *See id*., at 1910.

Here, the PCRA court did not grant relief to Abu-Jamal pursuant to *Williams*. At an earlier procedural stage, the PCRA court had ordered the Commonwealth to produce its complete casefile for review. After conducting that review, the PCRA Court denied Abu-Jamal's request for reinstatement of his appellate rights under *Williams* by concluding that he failed to establish that then-District Attorney Castille had significant involvement in a critical decision in Abu-Jamal's prosecution.

However, the PCRA court found that Abu-Jamal had satisfied another exception to the PCRA's time-bar by presenting a 1990 letter from then-District Attorney Castille to the Governor of Pennsylvania, urging the

Governor, without reference to Abu-Jamal, to "send a clear and dramatic message to all police killers that the death penalty in Pennsylvania actually means something." PCRA Court Opinion, 12/27/2018, at 30-3 (quoting Letter, 6/15/90). The PCRA court found that this letter constituted newly discovered evidence that raised an appearance of bias and impropriety, and therefore ordered the reinstatement of Abu-Jamal's appellate rights with respect to his first four PCRA petitions.

As this letter is foundational to our analysis, we reproduce it here for ease of reference:

### Re:  Death Warrants

Dear Governor Casey :

As you know, in February of this year the United States Supreme Court upheld the constitutionality of the Pennsylvania death penalty statute. Hence, no basis exists to further delay issuing death warrants within the Commonwealth. In fact, such action is necessary if death penalty cases are ever to move forward to their ultimate conclusion.

Once death row inmates have their direct appeals denied, there is little, if any, incentive for them to avail themselves of the existent state and federal court collateral review processes. Typically, they do so only if death warrants are signed. By way of illustration, state collateral review petitions were filed by defendants Leslie Beasley and Frederick Maxwell only after their death warrants were signed. Further, once such state collateral review challenges are disposed of, only reissuance of death warrants will prompt these defendants to file federal habeas corpus petitions. In fact, as to Mr. Beasley's first death penalty case, state collateral review proceedings – including Pennsylvania Supreme Court review – have now been concluded. As he has not yet sought federal court review, I ask that you immediately reissue a death warrant in that case.

Mr. Beasley's case is especially pertinent now, in light of the recent tragic events in Philadelphia over the past ten days in which two police officers in separate incidents have been shot to death. Ten years ago, on July 16, 1980, Leslie Beasley shot to death Police Officer Ernest Davis, who was responding to a radio call of "man with a gun." On April 6, 1981, the jury convicted Beasley and sentenced him to death as a police killer. I urge you to send a clear and dramatic message to all police killers that the death penalty in Pennsylvania actually means something. This can be emphatically accomplished by immediate issuance of a death warrant for Leslie Beasley.

My additional purpose in now contacting you is to identify for you the Philadelphia County death row inmates who have completed the direct appeal process and had their death sentences affirmed, but who have not initiated collateral review proceedings. I very strongly urge you immediately to issue death warrants in each and every one of these cases. Only such action by you will cause these cases to move forward in a legally appropriate manner. These Philadelphia death row inmates are:

Dewitt Crawley …
Donald Hardcastle …
William Holland …
Arnold Holloway …
Kevin Hughes …
Robert Lark …
Reginald Lewis …
Ronald Logan …
Jerome Marshall …
Kelvin Morris …
Ernest Porter …
Florencio Rolan …
Brian Thomas …
Herbert Watson …
Raymond Whitney …
Terrance Williams …

Thank you for your consideration of this very significant matter. I look forward to hearing from you.

Sincerely yours,

Ronald D. Castille
District Attorney

Letter, 6/15/1990 (irrelevant procedural details from list of Philadelphia death row inmates omitted).

After the court restored his appellate rights *nunc pro tunc*, Abu-Jamal filed a single notice of appeal from the four orders denying his previous PCRA petitions.[2] The PCRA court ordered Abu-Jamal to file a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).[3] Our review of the PCRA court's docket does not reveal any response to this order.[4] Nevertheless, the PCRA court provided this Court with a detailed opinion in support of its order.

_____

[2] We note that this single notice of appeal appears to violate our Rules of Appellate Procedure, as each order denying a separate PCRA petition was a final, appealable order. **See** Pa.R.A.P. 341(f)(1). As the Supreme Court directed us to apply **Reid** on remand, we decline to quash the appeal on this ground. **See** Pa.R.A.P. 2591.

[3] The Commonwealth did not appeal the PCRA court's order, though this does not, under **Reid**, affect our ability to consider whether the PCRA court had jurisdiction to restore appellate rights. **See Reid**, 235 A.3d at 1143 (stating that "it is appropriate for an appellate court to consider *sua sponte* the timeliness of a PCRA petition from which *nunc pro tunc* appellate rights have been reinstated, even where the Commonwealth has not separately appealed" from the order granting relief). The Commonwealth does argue in its appellate brief to this Court that **Reid**, while not directly controlling, nonetheless requires quashal of this appeal. **See** Commonwealth's Brief at 20-21.

[4] If Abu-Jamal failed to file the statement, it could have resulted in waiver of his issues on appeal. **See** Pa.R.A.P. 1925(b)(4)(vii). However, given our directions on remand, we decline to find waiver. **See** Pa.R.A.P. 2591.

Several days after the PCRA court's order denying in part and granting in part relief on Abu-Jamal's petition, the Commonwealth notified the court that it discovered previously undisclosed boxes of its Abu-Jamal casefile. Abu-Jamal subsequently filed the instant appeal. After receiving several extensions to the briefing schedule, Abu-Jamal filed his appellate brief in conjunction with an application for a remand to raise claims based upon evidence contained in the newly disclosed boxes.

Shortly thereafter, Maureen Faulkner filed an application to intervene in this appeal. This Court denied her application. Maureen Faulkner subsequently filed a King's Bench petition with the Supreme Court of Pennsylvania, seeking removal of the Philadelphia District Attorney's Office based on claims of bias and conflict of interest. The Supreme Court exercised its King's Bench jurisdiction and directed that all proceedings below, including the instant appeal, be stayed, but ultimately concluded Maureen Faulkner had failed to establish grounds to remove the Philadelphia District Attorney's Office from prosecuting this appeal. Once the King's Bench jurisdiction had been relinquished, Maureen Faulkner once again filed an application to intervene in this Court, arguing that the Supreme Court of Pennsylvania's exercise of its King's Bench jurisdiction established that she was entitled to intervene in this appeal.

In the meantime, this Court had directed the parties to show cause why this Court should exercise jurisdiction over this appeal instead of transferring

it to the Supreme Court. Both parties responded by indicating they had no objection to a transfer to the Supreme Court of Pennsylvania. As noted, we found that jurisdiction over these appeals properly resided in the Supreme Court of Pennsylvania. However, the Supreme Court disagreed with our reasoning, remanded the appeal to us, and directed us to apply *Reid*.

In *Reid*, the Supreme Court of Pennsylvania reviewed the claim of a petitioner who, like Abu-Jamal, filed a PCRA petition seeking restoration of his appellate rights due to Justice Castille's failure to recuse himself from reviewing those prior appeals. *See Reid*, 235 A.3d at 1131. The PCRA court there, much like the PCRA court here, restored Reid's right to appeal from a previous PCRA order *nunc pro tunc*. However, the Pennsylvania Supreme Court quashed the *nunc pro tunc* appeal, holding that the PCRA court did not have jurisdiction to grant *nunc pro tunc* relief because Reid had failed to establish his petition was timely under any of the exceptions to the PCRA's time bar.

As both Abu-Jamal and the Commonwealth recognize, this appeal is distinguishable from the appeal in *Reid*. There, the PCRA court relied explicitly on *Williams* in granting Reid *nunc pro tunc* relief. *See id*. Here, while Abu-Jamal also initially relied exclusively upon *Williams* in his petition, the PCRA court ultimately denied him relief pursuant to *Williams* because former

Justice Castille did not have "significant, personal involvement in a critical trial decision" in his case.[5] As stated by the PCRA Court:

> Accordingly, [Abu-Jamal's] **Williams** personal significant involvement based claim is denied as [Abu-Jamal] has not proved beyond a preponderance of the evidence that Mr. Castille as Assistant District Attorney or District Attorney had significant personal involvement in a critical trial decision in [Abu-Jamal's] case as required by **Williams**.

PCRA Court Opinion, 12/27/2018, at 26-7.

Instead, the PCRA court granted relief on the independent basis of due process concerns over the appearance of Justice Castille's bias due to the newly discovered evidence of the letter from then-District Attorney Castille to Governor Casey. In explaining its rationale, the PCRA stated:

> This court finds that recusal by Justice Castille would have been appropriate to ensure the neutrality of the judicial process in Petitioner's PCRA appeals before the Pennsylvania Supreme Court. As noted by the Pennsylvania Supreme Court in [**Commonwealth v. Darush**, 459 A.2d 727 (Pa.1983),] recusal is warranted when "a significant minority of the lay community could reasonably question the court's impartiality. 459 A.2d at 732. Proof of actual bias is not required. **Id**. Rather, the appearance of impropriety is sufficient to warrant recusal. [**In Interest of**] **Mcfall**, 617 A.2d [707,] 712 (Pa. 1992). If due process requires recusal where there is no evidence of bias as in **Darush**, then surely recusal would be required here, where a significant minority of the lay community could reasonably question Justice Castille's impartiality due to the June 15, 1990 letter to the Governor urging the issuance of death warrants, particularly against individuals convicted of killing police officers. A party is not limited in establishing personal bias in his own case. [**Commonwealth v.**] **Lemanski**, 529 A.2d [1085, 1088]A showing of bias against a particular class of defendants is

---

[5] **Commonwealth v. Reid**, 235 A.3d 1124, 1132 (Pa. 2020).

- 10 -

sufficient to warrant disqualification.***Id***.; ***Commonwealth v. Bryant***, 476 A.2d 422, [424] n.1 (Pa. Super. 1984).

***Id***., at 31.

In ***Reid***, the Supreme Court of Pennsylvania held that ***Williams*** announced a new constitutional rule. ***See Reid***, 235 A.3d at 1154. As such, a claim based on ***Williams*** is legally distinct from a claim based upon ***Darush***, ***McFall***, ***Lemanski***, and ***Bryant***, the cases cited by the PCRA Court.

Further, the Supreme Court's rejection of Reid's newly discovered evidence claim under the circumstances in ***Williams*** is factually and legally distinct from the circumstances here. With Abu-Jamal, the PCRA court was concerned not with an authorization to seek the death penalty, which was the issue in ***Williams***, but with the 1990 letter to the governor. As such, the PCRA court did not base relief on a finding that Castille was involved in a critical stage of Abu-Jamal's prosecution, which again was the issue involved in ***Williams***. Instead, the PCRA court restored Abu-Jamal's appellate rights based on a theory that District Attorney Castille's authorship of the 1990 letter created an unacceptable appearance of impropriety when Justice Castille sat in judgment of Abu-Jamal during his subsequent appeals. It is, therefore, clear that the PCRA court did not grant Abu-Jamal relief based on ***Williams.***

Before us, by way of this remand, is the Commonwealth's contention that the PCRA court lacked jurisdiction to grant relief on Abu-Jamal's newly discovered evidence claim. Specifically, the Commonwealth argues that Abu-Jamal did not timely raise his newly discovered fact claim. The courts of this

- 11 -

Commonwealth only have jurisdiction over a PCRA petition if it is timely filed. **See Reid**, 235 A.3d at 1140.

Generally, for a petition to be timely under the PCRA, the petitioner must file the petition within one year of the date that the petitioner's judgment of sentence becomes final. **See** 42 Pa.C.S.A. § 9545(b)1). A "judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." **Id**. at § 9545(b)(3).

A claim based on newly discovered facts qualifies for an exception to the PCRA's time bar. **See** 42 Pa.C.S.A. § 9545(b)(1)(ii). However, as with any exception to the PCRA time bar, Abu-Jamal was required to file a petition invoking the exception within 60 days of the date the claim could have first been presented.[6] **See Commonwealth v. Burton**, 158 A.3d 618, 627 (Pa. 2017). Here, the newly discovered fact is the 1990 letter. Abu-Jamal learned of this fact no later than October 3, 2017, when the PCRA provided a copy of the letter to him. As of sixty days later, Abu-Jamal had not filed any petition

---

[6]On October 24, 2018, our General Assembly amended section 9545(b)(2), extending the time for filing a petition from sixty days to one year from the date the claim could have been presented. **See** 2018 Pa. Legis. Serv. Act 2018-146 (S.B. 915), effective December 24, 2018. The amendment applies *only* to claims arising one year before the effective date of this section, December 24, 2017, or thereafter. Here, Abu-Jamal concedes that this claim arose no later than October 3, 2017, when the PCRA court provided the Castille letter to Abu-Jamal. **See** Appellant's Reply Brief, at 3. As a result, the sixty-day period applies here.

raising a claim based on the 1990 letter. The Commonwealth contends that this timeline establishes that Abu-Jamal failed to successfully invoke the newly discovered fact exception. *See* Appellee's Brief, at 21.

Abu-Jamal responds that the PCRA court granted him an extension of time to file this claim, as it granted him an extension for filing an amendment to his fifth petition predicated on *Williams*. He asserts that he complied with the PCRA court's extension and filed the amendment timely on July 9, 2018. As a result, he believes he successfully invoked the newly discovered fact exception by timely filing the amended petition. Abu-Jamal relies upon the Pennsylvania Supreme Court's decision in *Commonwealth v. Crispell*, 193 A.3d 919, 929-30 (Pa. 2018), which held that motions to amend a pending PCRA petition are governed by Pa.R.Crim.P. 905(A) and not the timeliness provisions of the PCRA.

The Commonwealth counters that *Crispell* applies only to amendments to timely filed petitions. *See id*., at 929 ("Because the PCRA court was faced with a motion to supplement a timely petition, rather than a new petition, the time restrictions of the PCRA did not apply"). Since Abu-Jamal's 2016 petition, predicated on *Williams*, was untimely pursuant to *Reid*, the Commonwealth argues that *Crispell* does not apply, and Abu-Jamal's fifth PCRA petition was untimely *ab initio*.

We agree with the Commonwealth that *Crispell* is distinguishable from this appeal but are not certain the distinction merits a different result. This is

because we agree that the PCRA court erred in not dismissing Abu-Jamal's fifth petition as untimely.

Here, the PCRA court initially concluded that Abu-Jamal's 2016 petition qualified for the newly discovered fact exception to the time bar due to the U.S. Supreme Court's decision in **Williams**. **See** Order Granting Motion for Discovery, 4/28/17, at n.1. It then permitted Abu-Jamal to amend the petition based on discovery provided by the Commonwealth during these proceedings. However, after the amended petition was filed, the PCRA correctly determined that the claims under **Williams** did not merit relief. Furthermore, for the reasons stated below, we determine that the claim of bias, based upon the 1990 letter, was untimely.

It is undisputed that Abu-Jamal raised the issue of then-District Attorney Castille's 1990 letter within 30 days of its discovery in the PCRA court, albeit not by a pleading. **See** Letter, 10/19/17, at 3. It is also undisputed that Abu-Jamal raised a claim asserting that the 1990 letter established an appearance of Justice Castille's bias in his amendment to his fifth PCRA petition. **See** Amended PCRA Petition, 7/9/18, at ¶ 5.b.

Under the circumstances of this case, we need not reach the issue of whether the PCRA Court's earlier order gave Abu-Jamal additional time to file the amended petition, as we conclude that he is due no relief pursuant to the 1990 letter. While the 1990 letter to the governor is evidence of a request by then-District Attorney Castille for the issuance of a death warrant to facilitate

and advance collateral review of death penalty cases, it is not equivalent to the evidence our jurisprudence has recognized as sufficient to require disqualification of a judge due to the appearance of impropriety.

Abu-Jamal was required to plead and prove the applicability of the newly discovered evidence exception. **See Commonwealth v. Blakeney**, 193 A.3d 350, 364 (Pa. 2018). To do this, he was obligated to prove that the newly discovered fact that supports his claim for relief was previously unknown. **See id**., at 365. An implied pre-requisite of this burden is that the newly discovered fact supports the legal claim presented. **See**, **e.g.**, **id**., at 367 ("The question for timeliness purposes is whether the newly-discovered facts form a predicate for the underlying claim").

This is the point at which the PCRA court erred. The PCRA court held that the 1990 letter formed a predicate to Abu-Jamal's claim that there was an unacceptable appearance of impropriety when Justice Castille sat in judgment of Abu-Jamal years later. A review of the legal contours of Abu-Jamal's claim reveals the PCRA court's error.

Our courts have long recognized that the mere appearance of impropriety, even in the absence of actual prejudice, is a sufficient basis to require a judge to recuse from hearing a particular case. **See Commonwealth v. Darush**, 459 A.2d 727, 731 (Pa. 1983). Where a Judge's impartiality may be reasonably questioned, she must recuse herself. **See In Interest of McFall**, 617 A.2d 707, 713 (Pa. 1992). "The party who asserts

that a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice or unfairness necessitating recusal." *Commonwealth v. Lemanski*, 529 A.2d 1085, 1088 (Pa. Super. 1987) (citation omitted).

Our case law has recognized several ways a litigant can establish that a judge should be disqualified due to the appearance of impropriety. First, a litigant can establish that the jurist can reasonably be considered to harbor a personal bias against the litigant. *See Darush*, 459 A.2d at 732 (requiring disqualification of sentencing judge who could not refute an allegation that he had said "[w]e want to get people like him [appellant] out of Potter County"); *see also Commonwealth v. Bryant*, 476 A.2d 422, 424 (Pa. Super. 1984) (recognizing allegation that trial judge had pre-determined appellant's sentence in prior cases for political purposes could be basis for disqualification).

Here, we have little trouble in concluding that the 1990 letter to the governor does not even arguably support a conclusion that Justice Castille harbored a personal bias against Abu-Jamal. We agree with the PCRA court that "there is no evidence that a policy to expedite death warrants was implemented to target" Abu-Jamal. PCRA Court Opinion, 12/27/2018, at 19. By Abu-Jamal's "own admission, [his] case was not ripe for the issuance of a death warrant at the time this alleged policy to expedite death warrants was being developed by Mr. Castille as District Attorney[.]" *Id*.

Further, the 1990 letter was dated June 15th. At that time, Abu-Jamal's direct appeal was still pending before the Supreme Court of the United States. *See Abu-Jamal v. Pa.*, 498 U.S. 881. As such, Abu-Jamal was not even in the class of litigants that District Attorney Castille was referencing in the letter. The 1990 letter therefore cannot create a reasonable inference that Justice Castille was personally biased against Abu-Jamal.

A second method involves establishing that the jurist could reasonably be considered to have a personal interest in the outcome of the litigant's case. *See McFall*, 617 A.2d at 713. In *McFall*, the Federal Bureau of Investigation caught a Common Pleas judge accepting a bribe from a litigant. *See id*., at 711. The judge agreed to become an undercover agent for the FBI in exchange for a promise that the FBI would reveal her undercover status to any prosecutor who later sought to charge her with accepting a bribe. *See id*. The judge continued to act as a jurist in criminal cases for approximately nine months. *See id*. Her cooperation with the FBI was not disclosed to any party who appeared before her. *See id*.

After her cooperation was publicly disclosed, 29 litigants who had appeared before the judge sought to nullify all judicial actions she had taken while she was cooperating with the FBI. *See id*. The Supreme Court of Pennsylvania concluded the litigants had established an appearance of impropriety and ordered new proceedings for the litigants before a different judge:

[The Judge's] potential prosecutors were the very individuals that appeared before her to prosecute [the 29 litigants.] … One could reasonably assume that, under the circumstances, [the Judge's] cooperation with the United States Attorney's office cast her in the role of a confederate of the prosecutors in the appellees' cases. The disturbing factor is not [the Judge's] cooperation alone, but rather the benefit she expected would derive from her cooperation. Her agreement, whether coerced or formed under her own free will, presents a situation palpably creating a circumstance where she would have an interest in the outcome of the criminal cases tried before her.

*Id.*, at 711-713 (paragraphing omitted).

We conclude the 1990 letter cannot create a reasonable inference that Justice Castille had a personal interest in the outcome of the litigation. There is no evidence that Castille had ever personally participated in the prosecution of Abu-Jamal:

By way of background, appellant was tried and convicted of the first degree murder of Philadelphia Police Officer Daniel Faulkner in 1982. Although [Castille] was employed as an Assistant District Attorney in 1982, [he] did not personally prosecute or otherwise participate in appellant's trial or his direct appeal. [He] resigned from [his] position as an Assistant District Attorney shortly after appellant filed his notice of appeal from his sentence of death and did not return to the Philadelphia District Attorney's Office until [he] was sworn in as District Attorney in January of 1986. At that time, appellant's direct appeal was still pending before the Supreme Court [of Pennsylvania].

…

[D]espite [his later election to the] position as District Attorney while his appeal was pending, [he] did not participate personally in the Office's appellate response to [Abu-Jamal's] appeal or otherwise gain knowledge of information exclusively within the control of the District Attorney's Office by virtue of [his] position.

- 18 -

*Commonwealth v. Abu-Jamal*, 720 A.2d 121, 122-23 (Pa. 1998). Further, there is no allegation that District Attorney Castille approved the decision to seek the death penalty against Abu-Jamal. Accordingly, we conclude the 1990 letter cannot support a claim that Justice Castille had a personal interest in the outcome of any of Abu-Jamal's appeals.

A third way we have recognized for establishing an appearance of impropriety is showing that a jurist has a bias against a particular class of litigants. *See Lemanski*, 529 A.2d at 1088. In *Lemanski*, the appellant was charged with possession and manufacture of marijuana. *See id*., at 1087. Prior to trial, he moved for disqualification of the trial judge based upon the judge's history of improper sentencing in drug cases. After his motion was denied, a jury convicted him of both charges.

On appeal, the appellant highlighted the trial judge's history of having sentences reversed for failing to properly apply the sentencing guidelines. *See id*., at 1088. Further, the appellant noted "comments from the bench and in a local newspaper interview where [the trial judge] candidly expressed both his displeasure with the Sentencing Guidelines and his opinion that in all drug cases the maximum penalty should be imposed." *Id*.

This Court concluded the appellant had established an appearance of impropriety based on a bias against drug offenders:

> The record before us indicates a predetermined policy with respect to sentencing drug offenders and we thus find that appellant has adequately supported his allegations of personal bias against a "particular class of litigants." We also are of the opinion that the

personal bias alleged was of such nature and intensity so as to prevent [appellant,] once convicted, from obtaining a sentence uninfluenced by the court's prejudgment of drug offenders generally.

*Id*., at 1089.

Here, the critical point is that the 1990 letter precedes Justice Castille's election to the Supreme Court of Pennsylvania, and therefore, his transition to the role of a jurist. In *Lemanski*, the evidence raising a reasonable inference that the judge was biased against a class of litigant included statements made by the judge while serving as a jurist. *See id*., at 1088. Similarly, in *Bryant*, the statements evidencing bias were allegedly uttered while the judge was serving as a jurist. *See id*., at 424.

In fact, our Supreme Court has been careful to avoid creating a prophylactic rule that would disqualify all prosecutors from ever acting as a jurist in cases involving defendants they had previously prosecuted. *See Darush*, 459 A.2d at 731-32. "Absent some showing of prejudgment or bias we will not assume a trial court would not be able to provide a defendant a fair trial based solely on prior prosecutorial participation." *See id*., at 731.

The 1990 letter is not evidence of prior prosecutorial participation. It is evidence that while acting as an advocate, District Attorney Castille took a policy position to advance completion of the appellate process for convicted murderers: "I very strongly urge you immediately to issue death warrants in each and every one of these cases. Only such action by you will cause these cases to move forward in a legally appropriate manner." He was not arguing

that the law should be changed or should be ignored. Rather, he simply took a position to facilitate collateral review of death sentences which was subscribed to by many prosecutors at the time.

District Attorney Castille wrote the 1990 letter while acting as an advocate, not as a jurist. Almost all jurists can have their impartiality questioned as generally, they served as legal advocates before assuming the role of a jurist. Mere advocacy of applying existing laws and procedures, such as that contained in the 1990 letter, cannot create an unacceptable appearance of impropriety. As a result, the 1990 letter is incapable of supporting a claim that there was an unacceptable appearance of impropriety.

Additionally, we note the allegation that Justice Castille was possibly biased against appellants like Abu-Jamal is hardly a surprising new discovery:

> To the contrary, as proven by other capital defendants who have been raising recusal claims since long before the death penalty authorization memorandum in *Williams* was discovered and the decision in that case was handed down, those materials were wholly unnecessary to support a recusal claim, as they only validated a previously known fact.

*Reid*, 235 A.3d at 1153 (citation omitted). In fact, Abu-Jamal himself challenged the propriety of Justice Castille sitting a jurist on Abu-Jamal's appeals more than 20 years ago. *See Commonwealth v. Abu-Jamal*, 720 A.2d 121 (Pa. 1998). In this light, the 1990 letter, while distinguishable from the death penalty authorization at issue in *Reid* and *Williams*, is still nothing more than "yet another conduit for the same claim" of bias against former

Justice Castille. ***Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1269 (Pa. 2008). It therefore cannot qualify as a newly discovered fact. ***See id***.

As we determine the 1990 letter cannot be a predicate for a claim of an unacceptable appearance of impropriety, we conclude the PCRA court did not have jurisdiction to restore Abu-Jamal's appellate rights *nunc pro tunc*. We therefore quash this appeal as untimely. Other than the Commonwealth's application to file *sur* reply brief, which we deny, we offer no opinion on the validity of the pending applications in this appeal, as we have no jurisdiction to decide them.

Appeal quashed. The Commonwealth's application to file *sur* reply brief denied. Appellant's application for remand and application to expedite remand denied as moot. Maureen Faulkner's applications to intervene denied as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2021